# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CAROL LYONS,

      Plaintiff,

v.                                                          Case No. _____

TROTT & TROTT,
BANK OF AMERICA, N.A., and                  Hon. _____
BAC HOME LOANS SERVICING, LP,

      Defendants.

                             Removed from: Oakland County Circuit Court
                             Case No. 12-126454-CH
                             Hon. Leo Bowman

## NOTICE OF REMOVAL FROM STATE COURT

      PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 28 U.S.C. §§ 1332, 1441(a), and

1446, the above-captioned action, which is currently pending in the Circuit Court for the County

of Oakland in the State of Michigan, is hereby removed by Defendant Bank of America, N.A.,

successor by merger to BAC Home Loans Servicing, L.P. (hereinafter "BANA" or "Removing

Defendant")[1] to the United States District Court for the Eastern District of Michigan, by the

filing of this Notice of Removal with the Clerk of the United States District Court for the Eastern

District of Michigan. As grounds for removal, BANA states as follows:

---

[1] Plaintiff names both Bank of America, N.A. and BAC Home Loans Servicing, LP as defendants. Effective July, 1, 2011, BAC Home Loans Servicing, L.P. merged with and into Bank of America, N.A. As such, Bank of America, N.A., servicer of the loans at issue, is the proper party to respond to the Complaint.

1.      On or about April 24, 2012, Plaintiff filed an action in the Circuit Court for the County of Oakland, State of Michigan, entitled *Carol Lyons v. Trott & Trott, Bank of America, N.A. and BAC Home Loans Servicing, LP*, Case No. 12-126454-CH (the "State Court Action").

2.      Pursuant to 28 U.S.C. § 1446(a), a complete copy of all process and pleadings served upon the Removing Defendant in the State Court Action is attached hereto as **Exhibit 1**.

3.      BANA was first served with the Summons and Complaint on April 25, 2012.

4.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because it has been filed within 30 days after BANA's receipt of the Summons and Complaint.

5.      This Court is the district and division "embracing the place where [the State Court] action is pending." 28 U.S.C. § 1441(a).  The Oakland County Circuit Court is located in the Eastern District of Michigan.

6.      Defendant Trott & Trott consents to this Removal.

## DIVERSITY JURISDICTION EXISTS

7.      This Court has original diversity jurisdiction pursuant 28 U.S.C § 1332, because this action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs and attorneys' fees.

8.      <u>Plaintiff</u>.  For purposes of diversity jurisdiction, a person is a citizen of the state in which he or she is domiciled.  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989).  "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."  *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).  Here, Plaintiff is a resident of Oakland County, Michigan.  *See* **Ex. 1**, Complaint ¶¶ 2-3.  Plaintiff does not allege that she has any intention of leaving Michigan.  *See Id.*  Therefore, upon information and belief, Plaintiff is domiciled in the State of

Michigan.

9.     BANA.  BANA was and is a national banking association.  For purposes of diversity jurisdiction, a national banking association is deemed to be a citizen of the state in which it is located.  28 U.S.C. § 1348.  A national banking association is "located" in the "State designated in its articles of association as its main office." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006).  According to its Articles of Association, BANA's main office is in the City of Charlotte, State of North Carolina.  Thus, BANA is not and has never been a citizen of the State of Michigan, within the meaning of 28 U.S.C. § 1332(c).

10.     Plaintiff Fraudulently Joined Trott & Trott In This Action.  Trott & Trott is a Michigan professional corporation; however, Trott & Trott's Michigan citizenship should not preclude diversity jurisdiction or otherwise prevent removal to this Court.  Plaintiff's claims relate to the foreclosure of the Property.  Trott & Trott cannot be held liable for those claims.  Therefore, and as further set forth below, Trott & Trott is an improperly, or fraudulently, joined defendant in this action.

11.     "Fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds," and such joinder occurs when "no colorable basis" exists for predicting that a plaintiff may recover against non-diverse defendants." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 492-93 (6th Cir. 1999) (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994).  Further, removal should not be denied for lack of diversity where "a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Id.* (citing *Alexander*, 13 F.3d at 949).

12.     Here, there is no basis for recovery against Trott & Trott, which, at most, is a nominal defendant.  Trott & Trott is a professional corporation of attorneys that acted as counsel

for the servicer of Plaintiff's mortgage loan. (Affidavit of William D. Meagher, attached hereto as **Exhibit 2**, ¶¶ 3-4.) Trott & Trott did not lend Plaintiff money and it is not the servicer of Plaintiff's loan. *Id.* at ¶ 5. Trott & Trott's role was limited to acting as counsel for the servicing agent and nothing more. Simply put, Trott & Trott did not (and could not) take any independent actions on which the propriety of the foreclosure will be determined for purposes of adjudicating Plaintiff's claims.

13.    A court in this judicial district previously found that the presence of Trott & Trott as a defendant in a case where plaintiff alleged improper foreclosure and a failure to modify a loan, as here, does not defeat diversity jurisdiction. *See Yuille v. Trott and Trott, PC*, 2011 U.S. Dist. LEXIS 111249, at *2 (E.D. Mich. March 30, 2011) (attached hereto as **Exhibit 3**). In *Yuille*, the court found that "Trott's citizenship is properly disregarded for purposes of determining whether the parties' citizenships are diverse because Trott was fraudulently joined." The court recognized that "[j]oinder is fraudulent when plaintiff has no cognizable cause of action against the defendant in question under state law." *Id.* at *2-3 (citation omitted) The court then reasoned that because "Trott has been acting solely as [defendant American Home Mortgage Servicing, Inc.'s] agent, appointed by [defendant American Home Mortgage Servicing, Inc.] to serve as its counsel to negotiate loan modification terms and/or to commence foreclosure proceedings. . . . Plaintiff's cause of action, if any, is against the principal, not the agent." *Id.* at *4 (citing *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 402-03, 729 N.W.2d 277 (2006)).

14.    Indeed, any argument by Plaintiff that Trott & Trott is liable under some sort of agency theory is without a basis in the law. As counsel to Plaintiff's mortgage-loan servicer, Trott & Trott cannot be held liable for carrying out the directions of its client. In *Edwards v. Std.*

*Fed. Bank, N.A.*, 2009 U.S. Dist. LEXIS 2590 (E.D. Mich. Jan. 14, 2009), a court of the Eastern

District of Michigan agreed that the plaintiff who was attempting to rescind the foreclosure on

her home had failed to state a claim upon which relief could be granted against Trott & Trott, as

the law firm's "only role in this case was to act as the attorneys for the LaSalle Bank." *Edwards*,

2009 U.S. Dist. LEXIS 2590, *10.  (Attached hereto as **Exhibit 4**).  In so ruling, the court

recognized that Michigan law does not provide for a cause of action against an adversary's

counsel. *Id.*  Specifically, the court stated as follows:

> The duties owed to a client by an attorney are not the "functional
> equivalent of a duty of care owed to the client's adversary."
> *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585, 591 (Mich.
> 1981).  Furthermore, courts have been reluctant to allow actions by
> third parties against attorneys, who were engaged in the
> representation of their clients, because of "the potential for
> conflicts of interest that could seriously undermine counsel's duty
> of loyalty to the client.*"  Beaty v. Hertzberg & Golden, P.C.*, 456
> Mich. 247, 571 N.W.2d 716, 720 (Mich. 1997) (citing *Friedman*,
> 312 N.W.2d at 585).
>
> In the case at bar, the only apparent nexus between the Defendants
> Trott and this litigation is the law firm's role as the counsel for the
> LaSalle Bank at the sheriff's sale of the mortgaged property.  The
> only mention by [the plaintiff] of the Defendants Trott occurs
> when she claims that this law firm was the "custodian and []
> agent[]," debt collector, and "attorney-in-fact by assignment" of
> the LaSalle Bank.  Notwithstanding these generalized allegations,
> [the plaintiff] has failed to set forth a specific claim upon which
> relief can be granted as it relates to the Defendants Trott.  There is
> nothing in the record that would suggest that this law firm or its
> named associates have or ever had any fiduciary obligations to [the
> plaintiff].  Thus, the Defendants Trott should not be subject to any
> claims of liability for [the plaintiff's] alleged injuries because they
> represented their client in this litigation.  Therefore, the Court
> must, and does, dismiss [the plaintiff's] claims against the
> Defendants Trott.

*Edwards*, 2009 U.S. Dist. LEXIS 2590, *11-12.  *See also Casey*, 273 Mich. App. at 402-03

(stating that "the public policy of maintaining a vigorous adversary system outweighs the

asserted advantages of finding a duty of due care to an attorney's legal opponent").  Thus, this

Court should find that Trott & Trott was fraudulently joined.  As such, complete diversity exists under 28 U.S.C. § 1332 because Plaintiff is a citizen of Michigan and BANA is a citizen of North Carolina.  *See Navarro Savings Ass'n. v. Lee*, 446 U.S. 458, 461 (1980) (stating that "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy") (citing *McNutt v. Bland*, 2 How. 9, 14 (1844); 6C Wright & Miller, Federal Practice and Procedure § 1556, pp. 710-711 (1971)).

15.     Pursuant to L.R. 81.1(a) and (b) and 28 U.S.C. § 1332(a), the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs and attorneys 'fees. Although Plaintiff does not identify a sum certain that she is hoping to recover with her Complaint, Plaintiff asks the Court, among other things, to quiet title in the real property, which is currently valued in excess of $75,000.00, and on which Plaintiff granted a mortgage to secure a promissory note in the original principal amount of $161,600.00 (which has a current balance of $145,557.39).  (*See* **Ex. 1**, at Request for Relief).

16.     When a plaintiff seeks specific performance, declaratory relief, or injunctive relief, the amount in controversy is measured by "the value of the object that is the subject matter of the action."   *Lorimer ex rel. Estate of Lorimer v. Berrelez,* 331 F. Supp. 2d 585, 591 (E.D. Mich. 2004) (citations omitted); *see also Cohn v. Petsmart*, 281 F.3d 837, 840 (9th Cir. 2002) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)) (holding "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *Nordica S.P.A. v. Icon Health & Fitness, Inc.*, 2009 WL 2462570, *6, fn. 4 (D.N.H. 2009) (citing *Lee Sch. Lofts, L.L.C. v. Amtax Holdings 106 L.L.C.*, 2008 WL 4936479, at *3 (E.D.Va. Oct. 29, 2008)) (observing "[w]hen specific performance is the desired remedy, the amount in controversy requirement is

satisfied if 'either the "direct pecuniary value" of the right the plaintiff seeks to enforce ... or the cost to the defendant of complying with any prospective equitable relief exceeds $75,000.'"); *Neely v. Consol Inc.*, 25 Fed. Appx. 394, 400 (6th Cir. 2002) (holding amount in controversy was equal to amount of lease). Therefore, because the object of the litigation includes real property (valued in excess of $75,000.00) on which Plaintiff granted a mortgage to secure a promissory note in the amount of $161,600.00, and because Plaintiff seeks to enjoin BANA from exercising rights thereunder, the object of the litigation has a value in excess of $75,000.00.

17.    While BANA denies the allegations in Plaintiff's Complaint, and denies any liability to Plaintiff whatsoever, if those allegations are proven to be true, the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs and attorneys' fees. Notwithstanding that the jurisdictional requirements have been met, nothing in this Notice of Removal should be construed as an admission that Plaintiff is entitled to any judgment or relief in her favor.

18.    A Notice of Filing of Removal and a copy of this Notice of Removal from State Court will be filed with the Oakland County Circuit Court as required by 28 U.S.C. § 1446(d). See **Exhibit 5**. Copies of the same will be served upon all counsel of record upon the filing of this Notice.

19.    Based on the foregoing, removal is appropriate pursuant to 28 U.S.C. § 1441 *et seq*.

WHEREFORE, Defendant Bank of America, N.A. hereby removes the State Court Action from the Circuit Court of Oakland County, State of Michigan, to this Court, and respectfully requests that the Court take jurisdiction of this civil action to the exclusion of any further proceedings in the State court.

Respectfully submitted,

DICKINSON WRIGHT PLLC

/s/ Amy Sabbota Gottlieb

_____
Amy Sabbota Gottlieb (P67020)
Ari M. Charlip (P57285
Attorneys for Bank of America, N.A.
Dickinson Wright PLLC
Troy, MI 48084-3312
(248) 433-7286
Email:  agottlieb@dickinsonwright.com
         acharlip@dickinsonwright.com

<u>**Certificate of Service**</u>

I hereby certify that on May 16, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: **Valerie A. Moran, Steven A. Jacobs**

In addition, I served the foregoing paper via U.S. Mail to:

**The Moran Law Firm**
**Valerie A. Moran**
**115 N. Center St. Suite 203**
**Northville, MI 48167**
*Counsel for Plaintiff*

**Trott and Trott, P.C.**
**Steven A. Jacobs**
**31440 Northwestern Hwy, Suite 200**
**Farmington Hills, MI 48334**

/s/ Amy Sabbota Gottlieb

Amy Sabbota Gottlieb (P67020)
Dickinson Wright PLLC
Attorneys for Bank of America, N.A.
2600 West Big Beaver Rd., Ste. 300
Troy, MI  48084
(248) 433-7286
Email:  agottlieb@hertzschram.com

# Ex. 1

To re-order this form, call (517) 337-1211
Target Information Management, Inc.
Approved, SCAO

| | | | |
|---|---|---|---|
| | | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff |

**STATE OF MICHIGAN**

JUDICIAL DISTRICT
JUDICIAL CIRCUIT
COUNTY PROBATE

**SUMMONS AND COMPLAINT**

12-126454-CH

JUDGE LEO BOWMAN
LYONS, CAROL v TROTT & TROTT

no.

Court address

Plaintiff name(s), address(es), and telephone no(s).

Carol Lyons

v

Defendant name(s), address(es), and telephone no(s).

BAC Home Loan Servicing

Plaintiff attorney, bar no., address, and telephone no.

Valerie A. Moran
115 N Center #203
Northville MI 48167
248-465-7400

---

**SUMMONS**  **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.  *Y Vote Show Cause 5/2/12*
2. **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued | This summons expires | Court clerk |
|---|---|---|
| APR 24 2012 | JUL 24 2012 | **BILL BULLARD JR.** |

*This summons is invalid unless served on or before its expiration date.

---

**COMPLAINT**  *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint/

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| | |

Place where action arose or business conducted

4/24/12
Date

Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (6/04)  SUMMONS AND COMPLAINT    MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR

STATE OF MICHIGAN

IN THE OAKLAND COUNTY CIRCUIT COURT

CAROL LYONS
     Plaintiff

12-126454-CH

JUDGE LEO BOWMAN
LYONS.CAROL  v  TROTT & TROTT

V

TROTT & TROTT
A Michigan A Professional
Services Corporation
BANK OF AMERICA, NA
BAC Home Loan Servicing, LP
        Jointly and severally
        Defendants

_____/

THE MORAN LAW FIRM
VALERIE A. MORAN (P 56498)
Attorney for Plaintiff
115 N. Center Street Suite 203
Northville, MI  48167
248-465-9400

_____/

There is no other pending or resolved civil action arising out of the
transaction or occurrence alleged in the complaint.

Valerie A. Moran

**VERIFIED COMPLAINT FOR QUIET TITLE, INJUNCTION, AND OTHER RELIEF**

Plaintiff, CAROL LYONS by and through her attorney. VALERIE A. MORAN

complain against Defendants as follows:

1.     This is an action for injunctive relief, equitable relief as well as damages from Defendant's failure to adhere to the specific and clear statutory and common law requirements relating to a mortgage loan modification and now a pending mortgage foreclosure. Plaintiff, a senior citizen, brings her claims under the MCL 600.3205 *et seq*, fraudulent misrepresentation and related claims for as well as claims equitable and injunctive relief. <u>Plaintiffs seek to enjoin the sheriff sale as Plaintiff, borrower, CAROL LYONS, upon information and belief, DOES IN FACT qualify for a HAMP loan modification orother loan modification that works TO REDUCE HER MORTGAGE PAYMENTS and should have been provided a loan modification that LOWERED her mortgage payment, but was denied such a loan modification and instead was offered a modification that in fact INCREASED HER PAYMENT</u> *(Exhibit 7)*

## JURISDICTION AND VENUE

2.     Plaintiff, CAROL LYONS, is an individual residing at the property, and owner of the property commonly referred to as: 690 GAMMA located in the City of Walled Lake, County of Oakland, State of Michigan. The real property is

Commonly referred to as: 690 Gamma Rd Walled Lake, MI 48390
Legal description on Appraisal: T2N R8E Sec 5 34 & 35 Tri-A sub Lot 45

See full legal description on Deed (Exhibit 1) incorporated herein.

Real Property tax identification number: 17-35-151-001

3.   Plaintiff is the owner of the property (**Exhibit 1: Deed**) and is the mortgagor on

the mortgage (**Exhibit 2: Mortgage**) and resides there with her

developmentally disabled adult son.

4.   Defendant, Bank of America, NA (BOA) is a National Bank chartered by the

Office of the Comptroller of the Currency (OCC) and conducting business in

Oakland County, State of Michigan.

5.   Defendant BAC Home Loan Servicing, LP, (BAC) upon information and belief is

a subsidiary and/or affiliate of Bank of America and conducts business in the

County of Oakland, State of Michigan.

6.   Defendant Trott & Trott is a domestic professional services corporation and local

lender designee pursuant to MCL 600.3205et seq, conducting business in the

County of Oakland, State of Michigan.

7.   This court has jurisdiction over this matter as the amount in controversy exceeds

$25,000 exclusive of costs and attorney fees, pursuant to Michigan Statute,

MCL 600.3205(a)(5) (**Exhibit 3: MCL 600.3205 et seq**) as the real property

which is the subject of this litigation is located in the County of Oakland and

as the Plaintiff seeks equitable and injunctive relief. Thus jurisdiction is proper

in this Honorable Court.


## FACTUAL BACKGROUND

8.   Plaintiff, entered into a refinanced her home. thereby entering into a contract with

Countrywide Home Loans, Inc. which was later assigned and/or transferred to

Bank of America, and/or a Bank of America affiliate. The note is in the possession of Defendants and was not provided to Plaintiff at the closing. The mortgage is attached (**Exhibit 2:Mortgage now held by Bank of America**).

9. Plaintiff, CAROL LYONS, at the time a retired senior citizen, sought assistance from Bank of America with her mortgage loan due to the economic downturn in the State of Michigan.

10. Defendant Bank of America provided her with contradictory instructions and advice pursuant to the HAM P (Home Affordable Modification Program) including falsely advising her of the criteria necessary to qualify and falsely advising her of the status of her loan modification review

11. Plaintiff received a foreclosure prevention notice from Defendant Trott & Trott regard to the mortgage and immediately complied and responded. (**Exhibit 4: Foreclosure Prevention Notices sent to Plaintiff**)

12. Plaintiff timely sought assistance of Genevieve Pajulio, a housing counselor from Oakland Livingston Human Services.

13. Notices sent did **not** comply with MCL 600.3205a(2) and MCL 600.4305d which specifically requires a that the official housing counselor list that was prepared by the Michigan state housing authority be included with the notice. (Exhibit: 3: MCL 600.3205et seq ). The list provided was not the list specifically required by statute but was instead an incomplete, outdated list (only current through 2009 and list was sent in 2011).

14. Plaintiff met with Defendant Trott & Trott representatives on or about **March 29, 2011** for the meeting which was allegedly to take place pursuant to the MCL 600.3205 et seq statute. Plaintiff was told that her loan modification was "still under review." At no time was it mentioned during the meeting that allegedly she had been turned down for the HAMP program back in 2010. (**Exhibit 5: letter confirming meeting pursuant to MCL 600.3205**)

15. Defendants initially claimed to be receptive to modification of the mortgage loan and provided Plaintiff with a payment amount pursuant to a trial loan modification. However, later, Defendants, refused to take payments at this amount and refused to advise Plaintiff of the amounts she was to pay, Plaintiff contacted Defendant's repeatedly requesting payment information, but was transferred from department to department and denied this information.

16. Plaintiff, a retired nurse and senior citizen, was initially advised by Defendants that she **"did not make enough money to qualify for a loan modification"** and was further advised that she needed to return to work in order to qualify for a loan modification.

17. Thereafter, as a direct result of Defendant's instructions, Plaintiff obtained a part time job as a cashier at Meijers.

18. Plaintiff, once employed, then again sought assistance to save her home, however, Defendant, Bank of America representatives then advised Plaintiff *"you make too much money"* and again refused to assist her in lowering her mortgage payments.

19.    Thereafter, Plaintiff was forced to quit her job due to health concerns.

20.    Plaintiff advised Defendants that she was no longer working, but Defendants refused to review her for a loan modification that lowered her payments.

21.    Defendants Bank of America and Defendant Trott & Trott also contradicted one another for months as to the state of Plaintiff's loan modification file. Defendant Bank of America claimed the file was closed, but Defendant Trott & Trott in response to Plaintiff's demand to see calculations used, claimed that the file was open and requested additional documents from Plaintiff which were provided. Plaintiff requested calculations from Trott and Trott the local designee for defendant Bank of America for the denied loan modification, but Trott & Trott contended the file remained under consideration and **failed to provide calculations in violation of MCL 600.3205 and continued to request documents from Plaintiff.**

22.    Plaintiff has REPEATEDLY provide all documents that Defendants have requested in an effort to obtain a loan modification which lowered her mortgage payment and would allow her to keep her home.

23.    Defendants have failed to work with Plaintiff and her housing counselor in good faith.

24.    Defendants have repeatedly refused to provide Plaintiff consistent information and relief as required pursuant to the guidelines.

25. Defendants had a duty to timely provide the calculations of the loan modifications that were allegedly being used as a basis for ALL calculations and failed to do so.

26. Plaintiff sent a Qualified Written Request (QWR) pursuant **to RESPA (Real** Estate Settlement Procedure Act) **and MCL 600.3205 et seq** on May 7, 2011 which was received by the Bank on May 18, 2011

27. Defendants had a duty to timely respond and to timely acknowledge the QWR, but failed to do so in violation of both State anti foreclosure statute MCL 600.3205 et seq and Federal Statute 12 USC 2605. As a result, Plaintiff has been damaged.

28. Plaintiff is entitled to special damages in the form of all costs and attorney fees as mandated by the aforementioned Federal statute.

29. Defendant's Bank of America's and BAC's local designee, Trott & Trott, pursuant to MCL 600.3205 et seq, denied that Plaintiff's loan modification file had been closed for months ,(as was claimed by Defendant Bank of America) and repeatedly failed to provide calculations used in the determinations as requested by Plaintiff and requested documents be sent.

30. Plaintiffs complied with all document requests of Defendants.

31. Defendants, upon information and belief in violation of MCL 600.3205 et seq failed to qualify the Plaintiff homeowner based upon her retirement income and instead misrepresented thie qualifying criteria to Plaintiff and falsely advised this retired senior citizen that she must return to work in order to save her home.

32. Plaintiff complied and obtained employment, however, thereafter, Defendant provided a loan modification that **increased** Plaintiff's payment.

33. Upon information and belief, said representations were done with the intent to prevent Plaintiff from obtaining a mortgage loan modification that lowered her payments and saved her home.

34. Defendants caused the alleged failure to qualify for a loan modification that lowered Plaintiff's payments by falsely and improperly advising Mrs. Lyons she needed additional income in order to be qualified under HAMP for a loan modification.

35. That Plaintiff, upon information and belief, does in fact qualify for a HAMP loan modification and did qualify at the time Defendants falsely claimed she needed to return to work.

**(Exhibit 6: Affidavit of Gilbert Borman)**

36. Defendant Bank of America, despite the fact that Plaintiff is represented by legal counsel, have once again been contacting her directly and have claimed that they are assisting her, however, per Trott & Trott the sale is proceeding. Thus, Defendants have further attempted to misrepresent and/or cause the probability of confusion as to the status of Sheriff Sale and mortgage loan modification.

37. That MCL 600.3205c(8) **(Exhibit 3: MCL 600.3205 et seq)** states that *"(i)f a mortgage holder or mortgage service begins foreclosure proceedings under this chapter in violation of this section, the borrower may file an action in Circuit Court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial foreclosure. If a borrower files an action under this section and the court*

*determine that the borrower participated in the process under section 3205b, a modification agreement was not reached and the borrower is eligible for modification under subsection (1) and subsection (7) does not apply, the court shall enjoin the foreclosure of the mortgage by advertisement and order that the foreclosure proceed under chapter 31."*

38.    That such a process may constitute deceptive act and/or unfair practice or otherwise violate state laws.

39.    That MCL 600.3204 provides that a party foreclosing the mortgage is either the owner of the indebtedness secured by the mortgage or a servicing agent of the mortgage.

40.    That upon information and belief, Defendant may be relying upon affidavits or other documents or may have signed other documents for recording or in support of the non-judicial foreclosure that may have procedural defects.

41.    That in addition, many affidavits may have been signed fraudulently, and/or outside of the presence of the notary public, or otherwise contrary to state law and contrary to the representations in the document.

42.    That such processes as set forth herein may constitute a deceptive act and/or an unfair practice or otherwise violate state laws.

43.    That Defendants, if allowed to proceed with Sheriff Sale, will cause Plaintiff, and her developmentally disabled son who also resides in the property, to suffer irreparable harm in that they will be evicted from their home and, as this is real property, there is no adequate remedy at law.

44. That Defendant must be ordered to continue and complete the loan modification according to HAMP guidelines and as mandated by Michigan law such that Plaintiff receives a benefit from the loan modification ( a reduced payment and not an increased one) and thus can keep possession and ownership of the home.

## COUNT -1 QUIET TITLE

45. Plaintiff hereby incorporates paragraphs 1-44 as though full set forth herein.

46. That the actions of the Defendants were intentionally designed to preclude the Plaintiff from obtaining a loan modification and keeping ownership and possession of her home.

47. That Defendants knew, or should have known that Plaintiff was attempting to keep ownership and possession of her home.

48. That Defendant has actual or imputed knowledge that Plaintiff was attempting to enter into a loan modification to lower her mortgage payment and keep possession of her home.

49. That in direct contradiction to their knowledge and statutory duties, Defendants did undertake to schedule a Sheriff Sale of the subject property and wrongfully denied Plaintiff the right to a loan modification as mandated by applicable HAMP guidelines and Michigan statute.

50. That as a direct result of Defendants wrongful acts, and despite Defendant's assurances to Plaintiff that they *"wanted to assist her"* the subject property is currently being scheduled for Sheriff Sale for April 24, 2012.

WHEREFORE, plaintiffs pray for the entry of judgment:

A.     Granting Plaintiff all legal title to the subject property described above

B.     Awarding Plaintiff all damages incurred by Plaintiffs as a result of Defendants actions herein

C.     Awarding Plaintiff costs and attorney fees herein

D.     Awarding any other relief that this court deems just and equitable, with cost and fees awarded to Plaintiff so wrongfully incurred.

## COUNT – II- INNOCENT/NEGLIGENT MISREPSRESENTATION

51.     Plaintiff hereby incorporates paragraphs 1-50 as though full set forth herein

52.     Defendants made innocent and/or negligent misrepresentations of material facts by promising or representing that Defendants would qualify Plaintiff for a HAMP loan modification so that Plaintiff could keep ownership and possession of her home.

53.     That the representations made by the Defendants were directed to Plaintiff and her housing counselor representative and were made in connection with the Loan Modification, ostensibly so that Plaintiff could remain in her home.

54.     That the representations were _false_ when they were made, and that Defendants knew or should have known they were false as Defendants failed to provide a loan modification which reduced her payments.  Defendants in fact, gave her false instructions: that she needed to return to work (even though in her seventies and retired).

55.     That Plaintiff would not have entered into loan modification process if Defendant had disclosed their intention not to consummate the loan modification.

56. As a direct and proximate result of Defendants acts, Plaintiff has suffered significant financial losses, severe emotional distress and are in danger of losing their home.

57. The Sheriff sale will financial benefit the Defendants and will further damage Plaintiff.

WHEREFORE, Plaintiffs pray for entry of judgment:

A. Granting Plaintiffs all legal title to the subject property described herein ordering Defendants to complete a loan modification in good faith

B. Awarding Plaintiffs all damages incurred by Plaintiffs as a result of Defendants actions herein;

C. Awarding Plaintiffs costs and attorney fees

D. Awarding any other relief that this Court deems just and equitable with cost and fees awarded to Plaintiffs for those fees and costs so wrongfully incurred.

## COUNT – III- FRAUD BASED UPON INTENTIONAL MISREPESENTATIONS, SILENT FRAUD AND BAD FAITH PROMISES

54. Plaintiff hereby incorporate paragraphs 1-53 as though full set forth herein

55. That Defendants falsely represented the criteria for loan modification programs.

56. That Defendants falsely represented that Plaintiff would be qualified for a loan modification under HAMP guidelines.

57. That Defendants, knew or should have known their representations were false.

58. Defendant entered into loan modification process with Plaintiff knowing and intending to proceed to Sheriff sale.

59.     That Defendants failed to disclose to Plaintiff its intention to go forward with the Sheriff
        Sale.

60.     That Defendants made false representations of material fact including the criteria and
        guidelines for HAMP qualification for the Plaintiff, and their intention to modify the
        loan consistent with Michigan Statute and HAMP guidelines.

61.     Defendants failed to disclose their intention to go forward with the Sheriff Sale and
        falsely implied to Plaintiff that the Sheriff Sale was being delayed.

62.     Defendants knew their representations were false when they were made as Defendants
        failed to provide the loan modification.

63.     Plaintiff would not have entered into the loan modification process if they had known that
        Defendant would not consummate the loan modification.

64.     Plaintiff relied upon Defendants representations, assurances, statements and promises
        relating to the Loan Modification and process.

65.     Defendants failure to disclose facts and/or to disclose facts accurately caused Plaintiff to
        have a false impression and Defendants benefited from their misrepresentations and Defendants
        knew or should have known that their failure to disclose these pertinent facts would create false
        impression and/or reliance on the part of the Plaintiff.

66.     Plaintiff relied upon Defendants false impressions and representations and as a result
        have been damaged and will be further financially damaged if not granted relief by this
        Honorable Court.

67.     As a direct and proximate result of Defendants acts, Plaintiff has suffered significant
        financial losses, severe emotional distress and are in danger of losing their home.

WHEREFORE, Plaintiffs pray for entry of Judgment:

A.     Granting Plaintiffs all legal title to the subject property described herein

B.     Awarding Plaintiffs all damages incurred by Plaintiffs as a result of Defendants actions

herein and ordering Defendants to complete a loan modification consistent with their

representatives;

C.     Awarding Plaintiffs costs and attorney fees

D.     Awarding any other relief that this Court deems just and equitable with cost and fees

awarded to Plaintiffs for those fees and costs so wrongfully incurred.

## COUNT –IV– BREACH OF MLC 600.3205ET SEQ

68.     Plaintiffs hereby incorporate paragraphs 1-67 as though full set forth herein

69.     That MCL 600.3205c requires Defendants to attempt to modify the mortgage loan

pursuant to the workout program and further that a copy of any calculation made by the

mortgage holder or mortgage servicer shall be provided.

70.     That Defendants failed to modify the loan as mandated by statute and HAMP guidelines

by failing to modify the loan using income alone.

71.     That Defendants failed to timely provide all calculations despite a statutory requirement

to provide the documents.

72.     That Defendants failed to provide the housing counselor list that is required by MCL

600.3205a(2) .

WHEREFORE, Plaintiff prays for entry of Judgment:

A.     Granting Plaintiff all legal title to the subject property described herein

B. Awarding Plaintiffs all damages incurred by Plaintiffs as a result of Defendants actions herein;

C. Awarding Plaintiffs costs and attorney fees

D. Awarding any other relief that this Court deems just and equitable with cost and fees awarded to Plaintiffs for those fees and costs so wrongfully incurred.

### COUNT – V- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff hereby incorporate paragraphs 1-72 as though full set forth herein.

74. Defendants were specifically put on notice that their actions were causing Plaintiff distress during the March 29, 2011 meeting.

75. Defendants intentionally disregarded this information and continued to utilize false improper criteria to frustrate and prevent the successful completion of the loan modification.

76. Defendants conduct was extreme, outrageous and beyond all possible bounds of decency.

77. Defendants knew or should have known the effect their acts would have on Plaintiff, a senior citizen.

78. As a result of Defendants actions, Plaintiff has suffered severe emotional distress, humiliation, high blood pressure needing medical treatment and has been damaged.


WHEREFORE, Plaintiffs pray for entry of Judgment:

A. Granting Plaintiffs all legal title to the subject property described herein

B. Awarding Plaintiffs all damages incurred by Plaintiffs as a result of Defendants actions herein;

C.     Awarding Plaintiffs costs and attorney fees

D.     Awarding any other relief that this Court deems just and equitable with cost and fees awarded to Plaintiffs for those fees and costs so wrongfully incurred.

## COUNT –VI- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

79.     Plaintiff hereby incorporate paragraphs 1-78 as though fully set forth herein.

80.     Defendants negligently disregarded Plaintiffs statements advising Defendants of the stress that the potential loss of their home was causing and continued to utilize false improper criteria to frustrate and prevent the successful completion of the loan modification.

81.     Defendants conduct was extreme, reckless, outrageous and beyond all possible bounds of decency.

82.     Defendants knew or should have known the effect their acts would have on Plaintiffs,

83.     As a result of Defendants actions, Plaintiff has suffered severe emotional distress, humiliation and has been damaged.

WHEREFORE, Plaintiffs pray for entry of Judgment:

A.     Granting Plaintiffs all legal title to the subject property described herein

B.     Awarding Plaintiffs all damages incurred by Plaintiffs as a result of Defendants actions herein and ordering Defendants to complete a loan modification consistent with their representations;

C.     Awarding Plaintiffs costs and attorney fees

D.      Awarding any other relief that this Court deems just and equitable with cost and fees awarded to Plaintiffs for those fees and costs so wrongfully incurred.

## COUNT -VII – CONCERT OF ACTION

84.     Plaintiff hereby incorporates paragraphs 1-83 as though fully set forth herein.

85.     Defendants acted in concert pursuant to a common design to attempt to illegally interfere and dispossess Plaintiff of her real property.

86.     Defendants, intentionally or recklessly acted to interfere and dispossess Plaintiffs of their real property and to interfere with Plaintiff's lawful possessory interest.

87.     Defendants knew or should have known that their actions were illegal, contrary to Michigan Statute and HAMP guidelines and would cause damage to Plaintiff.

88.     As a direct and proximate result of Defendants concert of action, Plaintiffs have suffered damages.


WHEREFORE, Plaintiffs pray for entry of Judgment:

A.      Granting Plaintiffs all legal title to the subject property described herein

B.      Awarding Plaintiffs all damages incurred by Plaintiffs as a result of Defendants actions herein;

C.      Awarding Plaintiffs costs and attorney fees

D.      Awarding any other relief that this Court deems just and equitable with cost and fees awarded to Plaintiffs for those fees and costs so wrongfully incurred.

WHERFORE, Plaintiff requests that this Honorable Court:

A. Stay all proceedings, pending a resolution of Plaintiff's legal and equitable claims and

   claims for relief as set forth herein.

B. An award of monetary damages as well as costs and attorney fees to Plaintiff and any

   other relief deemed appropriate by this Honorable Court.

Respectfully submitted,

By: _____

VALERIE A. MORAN (P 56498)
THE MORAN LAW FIRM
Attorney for Plaintiff
115 N. Center Street Suite 203
Northville, MI 48167

April 22, 2012

## VERIFICATION OF COMPLAINT

I declare that I have carefully read and understand the above Verified Complaint and declare that the statements above are truthful and accurate to the best of our knowledge, information and belief.

_____
CAROL LYONS

NOTARY:

Signed and sworn to before me in Oakland County, Michigan, on 4-23-12 .

sig/ albert a. Ferrari

/print/ ALBERT A. FERRARI

Notary public, State of Michigan, County of WAYNE .

17

# Exhibit 1

LIBER 3 4 2 | 3 PG 3 8 9



425921
LIBER 34213 PAGE 389
$52.00 MORTGAGE
$4.00 REMONUMENTATION
10/12/2004 08:34:55 A.M. RECEIPT# 122881
PAID RECORDED - OAKLAND COUNTY
G.WILLIAM CADDELL, CLERK/REGISTER OF DEEDS

# MORTGAGE

Return To:
The Premiere Mortgage Corporation

218 E GRAND RIVER
BRIGHTON, MI 48116
810-220-0300

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.



(A) "Security Instrument" means this document, which is dated          September 29th, 2004          ,
together with all Riders to this document.
(B) "Borrower" is Carol Lyons, A Single Woman

Borrower's address is 690 Gamma Road, Walled Lake, MI 48390
. Borrower is the mortgagor under this Security Instrument.

MICHIGAN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3023 1/01

-6(MI) (0401)
Page 1 of 15          Initials: 
    VMP Mortgage Solutions (800)521-7291

**O.K. - KB**

Apr-29-2012 04:09 PM Bank of America 2482092012                                    29/09

LIBER 3 4 2 1 3 PG 3 9 0

(C) "Lender" is  The Premiere Mortgage Corporation

Lender is a  Corporation
organized and existing under the laws of   The State of Michigan
Lender's address is 218 E GRAND RIVER, BRIGHTON, MI 48116

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated     September 29th, 2004  .
The Note states that Borrower owes Lender  One Hundred Sixty One Thousand Six
Hundred and  no/100.                                                                       Dollars
(U.S. $     161,600.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    October 1st, 2034       .
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

VMP-6(MI) (0401)                        Page 2 of 15          Initials: _U_           Form 3023 1/01

LIBER 34213 PG391

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the                      County          [Type of Recording Jurisdiction]
of          Oakland                    [Name of Recording Jurisdiction]:
Situated in City of Walled Lake, County of Oakland, State of Michigan:
Lot 45 of Tri-A Subdivision, according to the recorded plat thereof, as recorded in Plat Liber 76, page 4, Oakland County Records. 690 Gamma

Ward #:

Parcel ID Number: 17-35-151-001                    which currently has the address of
                     690 Gamma Road                              [Street]
Walled Lake                              [City] , Michigan  48390-3725  [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: _____

VMP-6(MI) (0401)                    Page 3 of 15                    Form 3023 1/01

LIBER 34213 PG392

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any;

Initials: _____

LIBER 3 4 2 1 3  PG 3 9 3

(c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

LIBER 3 4 2 1 3 PG 3 9 4

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

VMP-6(MI) (0401)          Page 6 of 15          Initials: _____          Form 3023 1/01

LIBER 34213 PG 395

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.



LIBER 3 4 2 1 3 PG 3 9 6

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).



Initials: _cc /_

LIBER 34213 PG397

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if

VMP®-6(MI) (0401)                    Page 9 of 15                    Initials:                     Form 3023 1/01

LIBER 34213 PG 398

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly

LIBER 34213 PG399

notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and



LIBER 34213 PG400

(d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any



VMP®-6(MI) (0401)

Page 12 of 15

Initials: _CC_

Form 3023 1/01

LIBER 34213 PG401

Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

VMP-6(MI) (0401)                          Page 13 of 15                          Initials: _CL_                          Form 3023 1/01

LIBER 3 4 2 1 3 PG 4 0 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          *Carol Lyons*          _____ (Seal)
                                   Carol Lyons                    -Borrower


_____          _____ (Seal)
                                                                 -Borrower


_____ (Seal)           _____ (Seal)
                 -Borrower                                       -Borrower


_____ (Seal)           _____ (Seal)
                 -Borrower                                       -Borrower


_____ (Seal)           _____ (Seal)
                 -Borrower                                       -Borrower

VMP -6(MI) (0401)                    Page 14 of 15                    Form 3023 1/01

LIBER 3 4 2 1 3 PG 4 0 3

**STATE OF MICHIGAN,** Livingston

County ss:

Acknowledged before me in Livingston
County, Michigan, on September 29th, 2004                    by
Carol Lyons, *a single woman*

_Kathleen C. DelGreco_

Notary Public, State of Michigan,
County of *LIVINGSTON*
My commission expires                    KATHLEEN A DELGRECO
Acting in the County of                    Notary Public, Livingston County, MI
                                           My Commission Expires Dec 21, 2004
              *Livingston*

This instrument was prepared by Patricia J Anderson
                              The Premiere Mortgage Corporation
                              218 E GRAND RIVER
                              BRIGHTON, MI 48116
                              Please return to: Premiere Mortgage

 -6(MI) (0401)                    Page 15 of 15                    Initials: _CL_                    Form 3023 1/01

# Exhibit 2

LIBER **16223** PG **215**   APR 29 56 1 0 2 1 2 3

**WARRANTY DEED**                                           TRS-6850/50

The Grantor(s) __James C. Profitt and Frances A. Profitt, husband and wife__,

whose address is __690 Gamma, Walled Lake, MI 48390__

convey(s) and warrant(s) to __Carol Lyons, a single woman__,

whose address is __46103 Grand River, Novi, MI 48374__

the following described premises situated in the __City__ of __Walled Lake__

County of __Oakland__ _____ and State of Michigan:

Situated in the City of Walled Lake, County of Oakland, State of Michigan

Lot 45, TRI-A SUBDIVISION, an recorded in Liber 76, Page 4, of Plats, Oakland
County Records.

690 Gamma          76004

$ 7.00  DEED
$ 2.00  REMONUMENTATION
$ 971.60  TRANSFER TAX (COMBINED)
29 APR 96  2:02 P.M.    RECEIPT# 338
PAID           RECORDED - OAKLAND COUNTY
LYNN D. ALLEN, CLERK/REGISTER OF DEEDS

For the sum of ONE HUNDRED TWELVE THOUSAND NINE HUNDRED & 00/100
( $112,900.00 ) Dollars

subject to easements and building and use restrictions of record and further
subject to zoning ordinances, if any.

Dated this  19th  day of  April  , 1996

Signed in the presence of:              Signed:

_Theresa A. Saab_                       _James C. Profitt_
Theresa A. Saab                         James C. Profitt

_Lisa V. Mazquit_                       _Frances A. Profitt_
Lisa V. Mazquit                         Frances A. Profitt

                                        STATE OF   REAL ESTATE
State of Michigan                       MICHIGAN   TRANSFER TAX
                          SS.
County of Oakland

The foregoing instrument was acknowledged before me this  19th  day of
April  , 1996 by James C. Profitt and Frances A. Profitt, husband and wife

                          _Theresa A. Saab_
                          Notary Public Oakland              County

                          My commission expires _____

Prepared by:  James Profitt              THERESA A. SAAB
              690 Gamma                   Notary Public, Oakland County, Michigan
              Walled Lake, MI 48390       My Commission Expires July 12, 1997
                                          O.K. -

County Treasurer's Certificate    City Treasurer's Certificate
                                                    009054

Recording Fee  9.00 + 1.00 certification
When recorded return to   Carol Lyons
                          690 Gamma
                          Walled Lake, MI 48390
County Transfer Tax $ 124.30
State Transfer Tax  $ 847.50
Tax Parcel No.  17-35-151-001
Send subsequent tax bills to   grantee

# Exhibit 3

REVISED JUDICATURE ACT OF 1961 (EXCERPT)
Act 236 of 1961

***** *600.3205a THIS SECTION IS REPEALED BY ACT 302 OF 2011 EFFECTIVE DECEMBER 31, 2012* *****

**600.3205a Notice from foreclosing party to borrower; contents; list of housing counselors; service; publication; failure of service; applicability of section and sections 3205b and 3205c.**

Sec. 3205a. (1) Subject to subsection (6), before commencing a proceeding under this chapter to which section 3204(4) applies, the foreclosing party shall serve a written notice on the borrower that contains all of the following information:

(a) The reasons that the mortgage loan is in default and the amount that is due and owing under the mortgage loan.

(b) The names, addresses, and telephone numbers of the mortgage holder, the mortgage servicer, or any agent designated by the mortgage holder or mortgage servicer.

(c) A designation of 1 of the persons named in subdivision (b) as the person to contact and that has the authority to make agreements under sections 3205b and 3205c. However, if section 3205(1) applies to the foreclosure proceeding, the person designated under this subsection shall be the individual, department, or unit designated under section 3205(1) and the notice shall give the name and address and a dedicated telephone number and a dedicated electronic mail address of the individual, department, or unit.

(d) That within 30 days after the notice is sent, the borrower may, either by contacting the person directly or by contacting a housing counselor from the list enclosed with the notice, request a meeting with the person designated under subdivision (c) to attempt to work out a modification of the mortgage loan to avoid foreclosure.

(e) That if the borrower requests a meeting with the person designated under subdivision (c), foreclosure proceedings will not be commenced until 90 days after the date the notice is mailed to the borrower.

(f) That if the borrower and the person designated under subdivision (c) reach an agreement to modify the mortgage loan, the mortgage will not be foreclosed if the borrower abides by the terms of the agreement.

(g) That if the borrower and the person designated under subdivision (c) do not agree to modify the mortgage loan but it is determined that the borrower meets criteria for a modification under section 3205c(1) and foreclosure under this chapter is not allowed under section 3205c(7), the foreclosure of the mortgage will proceed before a judge instead of by advertisement.

(h) That enclosed with the notice is a list of housing counselors prepared by the Michigan state housing development authority and that the borrower may request a housing counselor from the list to attend any meetings with a person designated under subdivision (c).

(i) That the borrower has the right to contact an attorney, and the telephone numbers of the state bar of Michigan's lawyer referral service and of a local legal aid office serving the area in which the property is situated.

(j) The number of days in the redemption period that will be available to the borrower if the property is eventually sold at a foreclosure sale under this chapter, unless the property is abandoned and section 3241 or 3241a applies.

(k) That, under section 3278, if the property is sold at a foreclosure sale under this chapter, the borrower will be held responsible to the person who buys the property at the mortgage foreclosure sale or to the mortgage holder for damaging the property during the redemption period.

(2) A person who serves a notice under subsection (1) shall enclose with the notice a list prepared by the Michigan state housing development authority under section 3205d of the names, addresses, and telephone numbers of housing counselors approved by the United States department of housing and urban development or the Michigan state housing development authority.

(3) A person shall serve a notice under subsection (1) by mailing the notice by regular first-class mail and by certified mail, return receipt requested, with delivery restricted to the borrower, both sent to the borrower's last known address.

(4) Within 7 days after mailing a notice under subsection (3), the person who mails the notice may publish a notice informing the borrower of the borrower's rights under this section. A person who elects to publish a notice under this subsection shall publish the information 1 time in the same manner as is required for publishing a notice of foreclosure sale under section 3208. The notice under this subsection shall contain all of the following information:

(a) The property address.

(b) A statement that informs the borrower of all of the following:

(*i*) That the borrower has the right to request a meeting with the mortgage holder or mortgage servicer.

(*ii*) The name of the person designated under subsection (1)(c) as the person to contact and that has the authority to make agreements under sections 3205b and 3205c.

(*iii*) That the borrower may contact a housing counselor by visiting the Michigan state housing development authority's website or by calling the Michigan state housing development authority.

(*iv*) The website address and telephone number of the Michigan state housing development authority.

(*v*) That if the borrower requests a meeting with the person designated under subsection (1)(c), foreclosure proceedings will not be commenced until 90 days after the date notice is mailed to the borrower.

(*vi*) That if the borrower and the person designated under subsection (1)(c) reach an agreement to modify the mortgage loan, the mortgage will not be foreclosed if the borrower abides by the terms of the agreement.

(*vii*) That the borrower has the right to contact an attorney, and the telephone number of the state bar of Michigan's lawyer referral service.

(5) A borrower on whom notice is required to be served under this section who is not served and against whom foreclosure proceedings are commenced under this chapter may bring an action in the circuit court for the county in which the mortgaged property is situated to enjoin the foreclosure.

(6) If the borrower and the person designated under subsection (1)(c) have previously agreed to modify the mortgage loan under section 3205b, this section and sections 3205b and 3205c do not apply unless the borrower has complied with the terms of the mortgage loan, as modified, for 1 year after the date of the modification.

**History:** Add. 2009, Act 30, Eff. July 5, 2009;—Am. 2011, Act 302, Imd. Eff. Dec. 22, 2011.

Compiler's note: Enacting section 1 of Act 302 of 2011 provides:
"Enacting section 1. Sections 3205a, 3205b, 3205c, and 3205d of the revised judicature act of 1961, 1961 PA 236, MCL 600.3205a, 600.3205b, 600.3205c, and 600.3205d, as amended by this amendatory act, apply to foreclosure proceedings in which the first notice under section 3205a of the revised judicature act of 1961, 1961 PA 236, MCL 600.3205a, is mailed to the mortgagor on or after February 1, 2012."

REVISED JUDICATURE ACT OF 1961 (EXCERPT)
Act 236 of 1961

***** *600.3205b THIS SECTION IS REPEALED BY ACT 302 OF 2011 EFFECTIVE DECEMBER 31, 2012* *****

**600.3205b Modification of mortgage loan; negotiations; contacting designated person or housing counselor; providing documents; scheduling meeting.**

Sec. 3205b. (1) If a borrower wishes to participate in negotiations to attempt to work out a modification of a mortgage loan, within 30 days after the notice under section 3205a is mailed to the borrower, the borrower shall either contact the person designated under section 3205a(1)(c) directly or contact a housing counselor from the list provided under section 3205a. After being contacted by a borrower under this subsection and within 30 days after the notice under section 3205a is mailed to the borrower, the housing counselor shall inform the person designated under section 3205a(1)(c) in writing of the borrower's request.

(2) Within 10 days after being contacted by a borrower or housing counselor under subsection (1), the person designated under section 3205a(1)(c) may request the borrower to provide any documents that are necessary to determine whether the borrower is eligible for a modification under section 3205c. The borrower shall give the person designated under section 3205a(1)(c) copies of any documents requested under this section within 60 days after the notice under section 3205a is mailed to the borrower. If the borrower does not provide the documents requested as required by this subsection, a party entitled to foreclose the mortgage may proceed with the foreclosure.

(3) After being informed that a borrower wishes to meet under this section, a person designated under section 3205a(1)(c) shall schedule a meeting with the borrower to attempt to work out a modification of the mortgage loan. At the request of the borrower, a housing counselor from the list provided under section 3205a may attend the meeting. The meeting and any later meetings shall be held at a time and place that is convenient to all parties, or in the county where the property is situated.

History: Add. 2009, Act 30, Eff. July 5, 2009;—Am. 2011, Act 302, Imd. Eff. Dec. 22, 2011.

Compiler's note: Enacting section 1 of Act 302 of 2011 provides:
"Enacting section 1. Sections 3205a, 3205b, 3205c, and 3205d of the revised judicature act of 1961, 1961 PA 236, MCL 600.3205a, 600.3205b, 600.3205c, and 600.3205d, as amended by this amendatory act, apply to foreclosure proceedings in which the first notice under section 3205a of the revised judicature act of 1961, 1961 PA 236, MCL 600.3205a, is mailed to the mortgagor on or after February 1, 2012."

© Legislative Council, State of Michigan

Apr-23-2012 04:05 PM Bank of America 2482092012                                         49/69

# REVISED JUDICATURE ACT OF 1961 (EXCERPT)
## Act 236 of 1961

***** *600.3205c THIS SECTION IS REPEALED BY ACT 302 OF 2011 EFFECTIVE DECEMBER 31, 2012* *****

## 600.3205c Loan modification.

Sec. 3205c. (1) If a borrower has, either directly or through a housing counselor, contacted a person designated under section 3205a(1)(c) under section 3205b but the process has not resulted in an agreement to modify the mortgage loan, the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification. Unless the loan is described in subsection (2) or (3), in making the determination under this subsection, the person designated under section 3205a(1)(c) shall use a loan modification program or process that includes all of the following features:

(a) The loan modification program or process targets a ratio of the borrower's housing-related debt to the borrower's gross income of 38% or less, on an aggregate basis. Housing-related debt under this subdivision includes mortgage principal and interest, property taxes, insurance, and homeowner's fees.

(b) To reach the 38% target specified in subdivision (a), 1 or more of the following features:

(*i*) An interest rate reduction, as needed, subject to a floor of 3%, for a fixed term of at least 5 years.

(*ii*) An extension of the amortization period for the loan term, to 40 years or less from the date of the loan modification.

(*iii*) Deferral of some portion of the amount of the unpaid principal balance of 20% or less, until maturity, refinancing of the loan, or sale of the property.

(*iv*) Reduction or elimination of late fees.

(2) In making the determination under subsection (1), if the mortgage loan is pooled for sale to an investor that is a governmental entity, the person designated under section 3205a(1)(c) shall follow the modification guidelines dictated by the governmental entity.

(3) In making the determination under subsection (1), if the mortgage loan has been sold to a government-sponsored enterprise, the person designated under section 3205a(1)(c) shall follow the modification guidelines dictated by the government-sponsored enterprise.

(4) This section does not prohibit a loan modification on other terms or another loss mitigation strategy instead of modification if the other modification or strategy is agreed to by the borrower and the person designated under section 3205a(1)(c).

(5) Before 90 days after the notice required under section 3205a(1) is sent or 10 days after the meeting between the borrower and the person designated under section 3205a(1)(c), whichever is later, the person designated under section 3205a(1)(c) shall provide the borrower with both of the following:

(a) A copy of any calculations made by the person under this section.

(b) If requested by the borrower, a copy of the program, process, or guidelines under which the determination under subsection (1) was made.

(6) Subject to subsection (7), if the results of the calculation under subsection (1) are that the borrower is eligible for a modification, the mortgage holder or mortgage servicer shall not foreclose the mortgage under this chapter but may proceed under chapter 31. If the results of the calculation under subsection (1) are that the borrower is not eligible for a modification or if subsection (7) applies, the mortgage holder or mortgage lender may foreclose the mortgage under this chapter.

(7) If the determination under subsection (1) is that the borrower is eligible for a modification, the mortgage holder or mortgage servicer may proceed to foreclose the mortgage under this chapter if both of the following apply:

(a) The person designated under section 3205a(1)(c) has in good faith offered the borrower a modification agreement prepared in accordance with the modification determination.

(b) For reasons not related to any action or inaction of the mortgage holder or mortgage servicer, the borrower has not executed and returned the modification agreement within 14 days after the borrower received the agreement.

(8) If a mortgage holder or mortgage servicer begins foreclosure proceedings under this chapter in violation of this section, the borrower may file an action in the circuit court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial foreclosure. If a borrower files an action under this section and the court determines that the borrower participated in the process under section 3205b, a modification agreement was not reached, and the borrower is eligible for modification under subsection (1), and subsection (7) does not apply, the court shall enjoin foreclosure of the mortgage by advertisement and order that the foreclosure proceed under chapter 31.

© Legislative Council, State of Michigan                              *Courtesy of www.legislature.mi.gov*

Apr-23-2012 04:09 PM Bank of America 2482092072                                                       44/09

**History:** Add. 2009, Act 31, Eff. July 5, 2009;—Am. 2011, Act 302, Imd. Eff. Dec. 22. 2011.

**Compiler's note:** Enacting section 1 of Act 302 of 2011 provides:
"Enacting section 1. Sections 3205a, 3205b, 3205c, and 3205d of the revised judicature act of 1961, 1961 PA 236, MCL 600.3205a, 600.3205b, 600.3205c, and 600.3205d. as amended by this amendatory act, apply to foreclosure proceedings in which the first notice under section 3205a of the revised judicature act of 1961, 1961 PA 236, MCL 600.3205a, is mailed to the mortgagor on or after February 1, 2012."

REVISED JUDICATURE ACT OF 1961 (EXCERPT)
Act 236 of 1961

***** 600.3205d THIS SECTION IS REPEALED BY ACT 302 OF 2011 EFFECTIVE DECEMBER 31, 2012 *****

**600.3205d Housing counselors; list; prohibitions; violation of subsection (2) or (3) as misdemeanor; penalty; exception.**

Sec. 3205d. (1) The Michigan state housing development authority shall develop a list of housing counselors approved by the United States department of housing and urban development or by the Michigan state housing development authority who may perform the duties of housing counselor under sections 3205a to 3205c.

(2) Subject to subsection (5), a person who is not on the list of housing counselors developed under this section shall not perform the duties of housing counselor under sections 3205a to 3205c.

(3) Subject to subsection (5), a person who is not on the list of housing counselors developed under this section shall not represent that the person is entitled to perform the duties of housing counselor under sections 3205a to 3205c.

(4) A person who violates subsection (2) or (3) is guilty of a misdemeanor punishable by imprisonment for not more than 90 days or a fine of not more than $2,000.00, or both.

(5) Subsections (2) and (3) do not apply to an attorney to whom both of the following apply:

(a) The attorney is licensed to practice law in this state.

(b) The attorney provides mortgage assistance relief services as part of his or her practice of law.

History: Add. 2009, Act 31, Eff. July 5, 2009;—Am. 2011, Act 302, Imd. Eff. Dec. 22, 2011.

Compiler's note: Enacting section 1 of Act 302 of 2011 provides:
"Enacting section 1. Sections 3205a, 3205b, 3205c, and 3205d of the revised judicature act of 1961, 1961 PA 236, MCL 600.3205a, 600.3205b, 600.3205c, and 600.3205d, as amended by this amendatory act, apply to foreclosure proceedings in which the first notice under section 3205a of the revised judicature act of 1961, 1961 PA 236, MCL 600.3205a, is mailed to the mortgagor on or after February 1, 2012."

# EXHIBIT 4

# TROTT & TROTT

### A PROFESSIONAL CORPORATION

| HEADQUARTERS: | GRAND RAPIDS: |
|---|---|
| 31440 Northwestern Hwy - Suite 200 | 4024 Park East Court Suite B |
| Farmington Hills, MI 48334 | Grand Rapids, MI 49546 |
| 248-642-2515  Fax 248-642-3628 | 616-942-0893  Fax 616-942-0921 |

### THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.

FIRST CLASS AND CERTIFIED MAIL RESTRICTED DELIVERY RETURN RECEIPT REQUESTED

Dated and Sent: January 18, 2011

Carol Lyons
690 Gamma Rd
Walled Lake, MI 48390-3725

RE: Carol Lyons
690 Gamma Rd
Walled Lake, MI 48390-3725
T&T #  360181F01
Loan #  79071743
Freddie Mac (DC) #242611672



Dear Borrower/Mortgagor:

This notice is being sent to the borrowers and/or mortgagors pursuant to MCL 600.3205a(1) pertaining to the mortgage for property located at 690 Gamma Rd, Walled Lake, MI 48390-3725. The mortgage loan is in default for non-payment. As of the date of this notice, the total amount due and owing under the mortgage loan is $150,091.20.

Trott & Trott, P.C., represents BAC Home Loans Servicing, L.P., which is the creditor to which your mortgage debt is owed or the servicing agent for the creditor to which the debt is owed.

The agent designated by the Mortgage Servicer and/or Mortgage Holder to contact and that has authority to make agreements under MCL sections 600.3205b and 600.3205c is:

Trott & Trott, P.C. 31440 Northwestern Highway, Suite 200, Farmington Hills MI 48334-2525 at (248) 593-1302 or fax written requests to (248) 205-4130 and reference T&T # 360181F01

Enclosed with this notice is a list of housing counselors prepared by the Michigan State Housing Development Authority (MSHDA). Within 14 days of the date of this notice, you may request a meeting with the agent designated above to attempt to work out a modification of the mortgage loan to avoid foreclosure by contacting a housing counselor from the list provided with this notice. You may also request a housing counselor to attend the meeting.

If you request a meeting with the agent designated above by contacting a housing counselor from the list provided with this notice within 14 days of the date of this notice, foreclosure proceedings will not be commenced until 90 days after the date of this notice. For this provision to be applicable, the request for a meeting must be made despite any independent loss mitigation options you may be pursuing with your lender.

If you and the agent designated above reach an agreement to modify the mortgage loan, the mortgage will not be foreclosed if you abide by the terms of the agreement.

If you and the agent designated above do not reach an agreement to modify the mortgage loan, but it is determined that you meet the criteria for a modification under MCL 600.3205c(1) and MCL 600.3205c(7) does not apply, the foreclosure of the mortgage will proceed before a judge instead of by advertisement.

You have the right to contact an attorney. The telephone number of the State Bar of Michigan's Lawyer Referral Service is (800) 968-0738. The telephone number of a local Legal Aid Office servicing the area in which the property is situated is (248) 253-1548.

These provisions apply ONLY to property claimed as a principal residence exempt from tax under section 7cc of the General Property Tax Act, 1893, PA 206, MCL 211.7cc.  To the extent your original obligation has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.  Please contact our office if you are on active military duty.

Yours very truly,
Trott & Trott, P.C.
Foreclosure Department
FC X
Phone: (248) 593-1302
T&T # 360181F01

Enclosure(s)



@@@@

Michigan State Housing Developments Authority & U.S. Dept of Housing and Urban Development's Foreclosure Prevention/Avoidance Counseling Agencies*   1

| Agency Name | Phone  Toll Free Fax Email Website | Contact Information | Address | City, State, Zip | Languages |
|---|---|---|---|---|---|
| COMMUNITY ACTION AGENCY | P:<br>T: | 517-263-7861<br>800-438-1845 | 400 West South Street | Adrian MI 49221 | |
| NORTHEAST MICHIGAN AFFORDABLE HOUSING | P:<br>F: | 989-356-9090<br>989-356-9111 | 123 North Second Ave | Alpena MI 49707 | |
| NORTHEAST MICHIGAN COMMUNITY SERVICE AGENCY, INC | P:<br>F:<br>E:<br>W: | 989-356-3474<br>989-356-5909<br>gwisel@nemcsa.org<br>www.nemcsa.org/ | 2375 Gordon Rd | Alpena MI 49707 | ENGLISH |
| GREENPATH, INC. | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 315 East Eisenhower Ste 206 | Ann Arbor MI 48108 | ENGLISH |
| MICHIGAN STATE UNIVERSITY EXTENSION SERVICE-WASHTENAW | P:<br>P:<br>F:<br>E:<br>W: | 734-222-3915<br>734-997-1678<br>734-222-3990<br>thelenn@msu.edu<br>www.ewashtenaw.org/homeownership | 705 N. Zeeb Rd<br>P.O. Box 8645 | Ann Arbor MI 48107 | ENGLISH |
| GREENPATH, INC. | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 131 E Columbia Ave, Ste 112 | Battle Creek MI 49015 | ENGLISH |
| NEIGHBORHOODS INC. OF BATTLE CREEK | P:<br>F:<br>E:<br>W: | 269-968-1113 x11<br>269-963-7022<br>kjohnston@nibc.org<br>www.nibc.org | 47 North Washington Ave | Battle Creek MI 49017-3025 | ENGLISH<br>SPANISH |
| BAY AREA HOUSING | P:<br>F: | 989-893-9292<br>989-893-9896 | 315 14th Street | Bay City MI 48708 | |
| KALAMAZOO NEIGHBORHOOD HOUSING SERVICES D/B/A<br>SOUTHWEST MI NEIGHBORHOOD HOUSING SVC | P:<br>F:<br>E: | 269-277-5830<br>269-277-5831<br>KATIE@KNHS.ORG | 777 Riverview Dr. Bldg D Ste 205 | Benton Harbor MI 49022 | ENGLISH |
| SOUTHWEST MI COMMUNITY ACTION AGENCY (SSWMI C.A.A.) | P:<br>T:<br>F:<br>E:<br>W: | 269-925-9077<br>800-334-7670<br>269-925-9371<br>contact@smcaa.com<br>www.smcaa.com | 185 E. Main St Ste 200 | Benton Harbor MI 49022 | ENGLISH<br>SPANISH |
| NORTHERN HOMES COMMUNITY DEV CORP<br>NORTHERN HOMES | P:<br>P:<br>T:<br>F:<br>E: | 231-582-6436<br>231-582-6344<br>866-637-1834<br>231-582-6274<br>alice@northernhomes.org | 1048 East Main St  P.O. Box 86 | Boyne City MI 49712 | ENGLISH |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 211 North First St Ste 300 | Brighton MI 48116 | ENGLISH |
| NORTHWEST MI COMMUNITY ACTION AGENCY INC | P:<br>T:<br>F:<br>E:<br>W: | 231-775-9781<br>800-443-2297<br>231-775-1448<br>jwhetstone@nmcaa.net<br>www.nmcaa.net | 1640 Marty Paul St | Cadillac  MI 49601 | ENGLISH<br>SPANISH<br>RUSSIAN |
| HUMAN DEVELOPMENT COMMISSION | P:<br>P:<br>T:<br>F:<br>F:<br>E:<br>W: | 989-673-4121<br>989-672-1799<br>800-843-6394<br>989-673-2031<br>989-673-0646<br>kellid@hdc-caro.org<br>www.hdc-caro.org/ | 429 Montague Ave | Caro MI 48723 | ENGLISH |
| HOUSING SERVICES FOR EATON COUNTY | P:<br>F:<br>E: | 517-541-1180<br>517-541-0369<br>hsec@cablespeed.com | 319  S. Cochran P.O. Box 746 | Charlotte MI 48813 | ENGLISH |
| MICHIGAN STATE UNIVERSITY EXTENSION SERVICES/MACOMB | P:<br>P:<br>F:<br>W: | 586-469-5180<br>586-469-6430<br>586-469-6948<br>www.msumoneywise.com | Verkuilen Bldg<br>21885 Dunham Rd Ste 12 | Clinton Twp MI 48036 | ENGLISH |
| MICHIGAN STATE UNIV EXTENSION SERVICE-IRON MOUNTAIN | P:<br>F:<br>E: | 906-875-6642<br>906-875-6775<br>wajrovl@msu.edu | 2 South 6th St | Crystal Falls MI 49920 | ENGLISH |
| MISSION OF PEACE CDC | P:<br>E: | 313-791-3421<br>mopc@aol.com | 6045 Fenton Ave | Dearborn Heights  MI 48125 | ENGLISH |
| ABAYOMI COMMUNITY DEVELOPMENT CORP | P:<br>F: | 313-541-9828<br>313-541-3820 | 24331 W. Eight Mile Rd | Detroit, MI 48219 | ENGLISH |

* Listing current as of 10/2008

Michigan State Housing Developments Authority & U.S. Dept of Housing and Urban Development's Foreclosure Prevention/Avoidance Counseling Agencies*

| Agency Name | Phone Toll Free Fax Email Website | Contact Information | Address | City, State, Zip | Languages |
|---|---|---|---|---|---|
| | E: | tmorris@abavomicdc.org | | | |
| | W: | www.abavomicdc.org | | | |
| AMANDALA COMMUNITY DEVELOPMENT CORP | P: F: | 313-347-2829 313-347-2831 | 7707 West Outer Drive | Detroit MI 48235 | |
| BETHEL HOUSING COUNSELING AGENCY | P: F: E: | 313-833-9912 313-833-5312 boal642828@sbcglobal.net | 5050 St. Antoine St | Detroit MI 48202 | ENGLISH |
| CENTER FOR COMMUNITY JUSTICE & ADVOCACY | P: E: W: | 313-832-4788 kbowdharris@miccja.org www.miccja.org | 4750 Woodward Ste 214 | Detroit MI 48201 | ENGLISH |
| CENTRAL DETROIT CHRISTIAN COMMUNITY DEVELOPMENT CORPORATION | P: F: W: | 313-873-0064 313-873-0063 www.dctcdc.org | 8840 Second Ave | Detroit MI 48202 | |
| DETROIT NON PROFIT HOUSING CORPORATION | P: F: E: | 313-972-1111 313-972-1125 dctroitnon@aol.com | 8904 Woodward Ave Ste 279 Considine Center | Detroit MI 48202-1821 | ENGLISH |
| FAMILY TREE, INC | P: F: E: | 313-962-2329 313-961-4631 Tfamilytree@aol.com | 243 W. Congress Ste 350 | Detroit MI 48226 | ENGLISH |
| GREENPATH, INC | P: T: E: W: | 888-860-4167 888-860-4167 housingdepartment@greenpath.com www.greenpath.com | 2111 Woodward Ave Ste 906 | Detroit MI 48201 | ENGLISH |
| MICHIGAN NEIGHBORHOOD PARTNERSHIP | P: F: | 313-361-4530 313-361-4540 | 3301 23rd St | Detroit MI 48208 | |
| MISSION OF PEACE (BRANCH OFFICE) | P: F: E: | 313-967-0140 313-967-0123 mopc@aol.com | 333 West Fort Street Ste 1200 | Detroit MI 48226 | ENGLISH |
| NATIONAL FAITH HOMEBUYERS PROGRAM | P: F: E: W: | 313-255-9500 313-255-9555 shaddinaharris@aol.com www.nationalfaith.org | 17405 Lasher | Detroit MI 48219 | ENGLISH |
| NEIGHBORHOOD LEGAL SERVICES OF MICHIGAN | P: F: W: | 313-964-1975X1206 313-963-2584 www.nlsmlaw.us | 455 West Fort Street Ste 214 | Detroit MI 48226 | ENGLISH |
| NEW HOPE COMMUNITY DEVELPOMENT | P: F: W: | 313-255-6275 313-255-0117 www.newhopedetroit.org | 19487 Evergreen | Detroit MI 48219 | |
| NON-PROFIT HOUSING CORPORATION | F: E: W: | 313-255-0117 kgruver@newhopedetroit.org www.newhopedetroit.org/ | | Detroit MI 48219 | |
| PHOENIX HOUSING & COUNSELING NON-PROFIT, INC | P: F: E: | 313-964-4207 313-964-3861 phoenixhousing@sbcglobal.net | 1640 Porter St | Detroit MI 48216 | ARABIC ENGLISH SPANISH |
| SOUTHWEST HOUSING SOLUTIONS CORPORATION AKA SW HOUSING SOLUTIONS | P: F: F: F: E: W: | 313-841-9641 313-841-3727 313-841-9647 313-841-3734 dpederson@swsol.org www.swsol.org | 1920 25th Street | Detroit MI 48216 | ENGLISH SPANISH |
| U-SNAP-BAC NON-PROFIT HOUSING CORPORATION | P: F: W: | 313-640-1100 313-640-1112 www.usnapbac.org | 14901 East Warren | Detroit MI 48224 | |
| WAYNE COUNTY MORTGAGE FORECLOSURE PREVENTION PROGRAM a/k/a WAYNE COUNTY COUNSELING SERVICES | P: T: F: E: W: | 313-833-2948 877-693-6199 313-833-0364 hjsge@co.wayne.mi.us www.fightmortgageforeclosure.com | 640 Temple | Detroit MI 48201-2599 | ENGLISH |
| CENTER FOR FINANCIAL HEALTH | P: T: F: E: W: | 800-262-6285 x 425 800-262-6285 517-482-3762 adelingm@centerforfinancialhealth.org www.centerforfinancialhealth.org | 2400 West Rd counseling office by appointment | East Lansing MI 48823 | ENGLISH |
| MICHIGAN STATE UNIVERSITY EXTENSION SVCS | P: F: E: W: | 517-432-5620 517-353-4846 costner@gnu.edu fcs.msue.msu.edu | 301 Administration Building (240 Agricultural Hall) Contract and Grant Admin | East Lansing MI 48824 | ENGLISH |
| MICHIGAN STATE UNIV EXTENSION- DELTA COUNTY | P: | 906-788-3032 | 2840 College Ave | Escanaba MI 49829 | ENGLISH |

* Listing current as of 10/2

Apr-25-2012 04:09 PM Bank of America 2482092072

Michigan State Housing Developments Authority & U.S. Dept of Housing and Urban Development's Foreclosure Prevention/Avoidance Counseling Agencies*

| Agency Name | Phone Free Fax Email Website | Contact Information | Address | City, State, Zip | Languages |
|---|---|---|---|---|---|
| | F: | 906-786-2643 | | | |
| | E: | moberg@msu.edu | | | |
| ACCEL | P: | 866-643-8114 | 38505 Country Club Dr Ste 220 | Farmington Hills MI 48331 | ENGLISH |
| | T: | 888-860-4167 | | | |
| | F: | 248-553-8970 | | | |
| | W: | www.greenpath.com | | | |
| GREENPATH DEBT SOLUTIONS- HPF AFFILIATE | P: | 248-553-5400X 5463 | 38505 Country Club Dr Ste 210 | Farmington Hills MI 48331 | ENGLISH SPANISH |
| | E: | sbriggs@greenpath.com | | | |
| GREENPATH, INC | P: | 888-860-4167 | 38505 Country Club Dr Ste 120 | Farmington Hills MI 48331 | ENGLISH SPANISH |
| | T: | 888-860-4167 | | | |
| | F: | 248-553-8970 | | | |
| | E: | housingdepartment@greenpath.com | | | |
| | W: | www.greenpath.com | | | |
| GREENPATH, INC (MSO) | P: | 888-860-4167 | 38505 Country Club Dr. Ste 210 | Farmington Hills MI 48331 | ENGLISH |
| | T: | 888-860-4167 | | | |
| | w: | www.greenpath.com | | | |
| GREENPATH, INC | P: | 888-860-4167 | 2222 S. Linden Rd. Ste D | Flint MI 48532 | ENGLISH |
| | T: | 888-860-4167 | | | |
| | E: | housingdepartment@greenpath.com | | | |
| | W: | www.greenpath.com | | | |
| METRO COMMUNITY DEVELOPMENT METRO HOUSING PARTNERSHIP | P: | 810-767-4622 X 0 | Mott Foundation Building 503 S. Saginaw St Ste 804 | Flint  MI 48502 | ENGLISH SPANISH GREEK |
| | F: | 810-767-4664 | | | |
| | E: | acreww@flint.org | | | |
| | W: | www.metro-community.org | | | |
| MID-MICHIGAN COMMUNITY ACTION AGENCY | P: | 989-386-0862 | 1574 E. Washington Rd | Farwell  MI 48622 | |
| | F: | 989-386-3277 | | | |
| FLINT NEIGHBORHOOD IMPROVEMENT & PRESERVATION PROJECT INC. | P: | 810-766-7212 X 109 | 505 W. Court St | Flint MI 48503 | |
| | F: | 810-766-7040 | | | |
| | W: | www.fnipp.org/openpage | | | |
| MISSION OF PEACE MISSION OF PEACE COMMUNITY DEV CORP. MISSION OF PEACE HCA | P: | 810-232-0104 X 113 | 877 E. Fifth Ave | Flint MI 48503-1741 | ENGLISH SPANISH |
| | T: | 866-674-0104 | | | |
| | F: | 810-341-8471 | | | |
| | P: | 810-232-0104 | | | |
| | F: | 810-235-6878 | | | |
| | E: | mopc@aol.com | | | |
| | W: | www.missionofpeace.com | | | |
| GREENPATH, INC | P: | 888-860-4167 | 3051 Commerce Dr St 3 | Fort Gratiot MI 48059 | ENGLISH |
| | T: | 888-860-4167 | | | |
| | E: | housingdepartment@greenpath.com | | | |
| | W: | www.greenpath.com | | | |
| NCCS CENTER FOR NONPROFIT HOUSING | P: | 231-924-0641 X 127 | 6308 S. Warner | Freemont MI 49412 | ENGLISH SPANISH |
| | T: | 800-379-0221 | | | |
| | F: | 231-924-5594 | | | |
| | E: | rholst@cnhousing.org | | | |
| | W: | www.cnhousing.org | | | |
| GREENPATH, INC. | P: | 888-860-4167 | 810 S. Otsego Ave Ste 105 | Gaylord MI 49735 | ENGLISH |
| | T: | 888-860-4167 | | | |
| | E: | housingdepartment@greenpath.com | | | |
| | W: | www.greenpath.com | | | |
| CITY OF GRAND HAVEN | P: | 616-935-3270 | 20 N. Fifth St | Grand Haven MI 49417 | |
| | F: | 616-844-2051 | | | |
| CLANCY STREET MINISTRIES | P: | 616-235-2195 | 940 Clancy Ave, NE | Grand Rapids MI 49503 | ENGLISH |
| | F: | 616-233-0828 | | | |
| | E: | clancyst@aol.com | | | |
| GRAND RAPIDS URBAN LEAGUE | P: | 616-245-2207 X 206 | 745 Eastern Ave, SE | Grand Rapids MI 49503-5544 | ENGLISH SPANISH |
| | F: | 616-245-7026 | | | |
| | E: | leussenbauer@grurbanleague.org | | | |
| | W: | grurbanleague.org | | | |
| GREENPATH, INC | P: | 888-860-4167 | 3210 Eagle Run Dr NE Ste 102 | Grand Rapids MI 49525 | ENGLISH OTHERS |
| | T: | 888-860-4167 | | | |
| | E: | housingdepartment@greenpath.com | | | |
| | W: | www.greenpath.com | | | |
| HOME REPAIR SERVICES OF KENT COUNTY INC | P: | 616-241-2601 | 1100 South Division | Grand Rapids  MI 49507 | ENGLISH SPANISH |
| | T: | 616-241-5151 | | | |
| | E: | dfacoba@thomerepairservices.org | | | |
| | W: | www.homerepairservices.org | | | |
| INNER CITY CHRISTIAN FEDERATION | P: | 616-336-9333 x 302 | 920 Cherry SE | Grand Rapids MI 49506 | ENGLISH SPANISH |
| | F: | 616-336-9323 | | | |
| | E: | ahernandez@iccf.org | | | |

* Listing current as of 10/200

Michigan State Housing Developments Authority & U.S. Dept of Housing and Urban Development's Foreclosure Prevention/Avoidance Counseling Agencies*

| Agency Name | Phone Toll Free Fax Email Website | Contact Information | Address | City, State, Zip | Languages |
|---|---|---|---|---|---|
| | W: | www.iccf.org | | | |
| LIGHTHOUSE COMMUNITIES INC | P:<br>F:<br>E:<br>W: | 616-451-9140 x 234<br>616-451-0615<br>vanessa@lccr.net<br>www.lccr.net | 1422 Madison Ave SE | Grand Rapids MI 49507 | ARABIC<br>ENGLISH<br>SPANISH |
| MSU EXTENSION CLARE | P:<br>F:<br>E: | 989-539-7805<br>989-539-2791<br>woodward2@msu.edu | 225 W. Main St<br>P.O. Box 439 | Harrison MI 48625 | ENGLISH |
| COMMUNITY ACTION AGENCY | P:<br>T: | 517-437-3346<br>800-750-9300 | 55 Barnard St | Hillsdale MI 49242 | |
| COMMUNITY ACTION HOUSE | P:<br>F:<br>W: | 616-738-1170<br>616-738-8533<br>www.communityactionhouse.org | 345 West 14th St | Holland MI 49423 | SPANISH |
| MSU EXTENSION IONIA | P:<br>F:<br>E: | 616-527-5357<br>616-522-1449<br>longbr@msu.edu | 50 E. Sprague Rd | Ionia MI 48846 | ENGLISH |
| MICHIGAN STATE UNIVERSITY EXTENSION DICKINSON AND IRON COUNTY | P:<br>F:<br>E: | 906-774-0363<br>906-774-4672<br>waltrovi@msu.edu | 800 Crystal Lake Blvd | Iron Mountain MI 49801 | ENGLISH |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-890-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 629 West Cloverland Dr Ste 9 | Ironwood MI 49938 | ENGLISH |
| COMMUNITY ACTION AGENCY | P:<br>F:<br>P:<br>F:<br>E:<br>W:<br>W: | 517-788-6495<br>517-788-6398<br>517-784-4800<br>517-784-5188<br>jbudd@caajlh.org<br>www.caajlh.org<br>www.caajlh.org/counties | 1214 Greenwood Ave | Jackson MI 48203 | AMERICAN SIGN LANGUAGE<br>ENGLISH |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 211 West Ganson | Jackson MI 49201 | ENGLISH |
| JACKSON AFFORDABLE HOUSING CORPORATION | P:<br>F:<br>W: | 517-788-4626<br>517-780-4721<br>www.jacksonaffordablehousing.org | 161 W. Michigan Ave | Jackson MI 49201 | ENGLISH |
| KALAMAZOO NEIGHBORHOOD HOUSING SVCS INC | P:<br>F:<br>E:<br>W: | 269-385-2916<br>269-385-9912<br>tim@knhs.org<br>www.knhs.org | 802 S. Westnedge Ave | Kalamazoo MI 49008 | ENGLISH |
| CAPITAL AREA COMMUNITY SERVICES, INC | P:<br>P:<br>W: | 517-393-1722<br>517-393-6631<br>www.cacs-inc.org | 1301 Rensen St | Lansing MI 48910 | |
| CENTER FOR FINANCIAL HEALTH | P:<br>F:<br>W: | 800-262-6285 X 425<br>517-482-3762<br>www.centerforfinancialhealth.org | 101 S. Washington Square<br>Ste 900 | Lansing MI 48933 | |
| FRANKLIN STREET COMMUNITY HOUSING CORP | P:<br>F:<br>E:<br>W: | 517-482-8708<br>517-371-1729<br>221FranklinStreet@SBCGlobal.net<br>www.FSCHC.org | 618 Seymour St | Lansing MI 48933 | ENGLISH |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 612 S. Creyts Rd Ste C | Lansing MI 48917 | ENGLISH<br><br>SPANISH |
| MICHIGAN STATE HOUSING DEV AUTHORITY | P:<br>T:<br>E:<br>W: | 517-373-6280<br>866-946-7432<br>mercerj1@michigan.gov<br>www.michigan.gov/mshda | 735 E. Michigan Ave<br>P.O. Box 30044 | Lansing MI 48909 | ENGLISH<br>SPANISH |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 826 S. Monroe St | Monroe MI 48161 | ENGLISH |
| MSU EXTENSION LAPEER | P:<br>F:<br>W: | 810-667-0341<br>810-667-0355<br>www.msue.msu.edu/lapeer | 287 West Nepessing St | Lapeer MI 48446 | |
| SCHOOLCRAFT COUNTY E.D.C | P:<br>F: | 906-341-5126<br>906-341-5555 | 300 Walnut St | Manistique MI 49854 | |

Michigan State Housing Developments Authority & U.S. Dept of Housing and Urban Development's Foreclosure Prevention/Avoidance Counseling Agencies*

| Agency Name | Phone Toll Free Fax Email Website | Contact Information | Address | City, State, Zip | Languages |
|---|---|---|---|---|---|
| LISTENING EAR CRISIS CENTER | P:<br>F:<br>W: | 989-773-6904 X 228<br>989-775-3716<br>www.listeningear.com | 209 S. Main | Mt. Pleasant MI 48858 | |
| MONROE COUNTY OPPORTUNITY PROGRAM | P:<br>F: | 734-241-2775 X 208<br>734-457-0630 | 1140 S. Telegraph Rd | Monroe MI 48161 | |
| GREENPATH, INC | P:<br>F:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 800 Ellis Rd Ste 269<br>Mailbox 540 | Muskegon MI 49441 | ENGLISH |
| NEIGHBORHOOD INVESTMENT CORP | P:<br>F:<br>W: | 231-727-0809<br>231-727-8611<br>www.nv-nic.org | 1115 Third St | Muskegon MI 49441 | |
| MICHIGAN STATE UNIVERSITY EXTENSION MARQUETTE | P:<br>F:<br>E: | 906-475-5731<br>906-475-4940<br>rossberg@msu.edu | 184 U.S. Highway 41 East | Negaunee MI 49866 | ENGLISH |
| ACCESS | P:<br>T: | 866-648-8114<br>800-546-3247 | 23300 Greenfield Rd Ste 102 | Oak Park MI 48237 | ENGLISH |
| NORTHWEST MI COMMUNITY ACTION AGENCY INC | P:<br>T:<br>F:<br>E:<br>W: | 616-347-9070<br>800-443-5518<br>616-347-3664<br>kgreenwald@nmcaa.net<br>www.nmcaa.net | 2202 Mitchell Park Ste 4 | Petoskey MI 49770 | ENGLISH<br>RUSSIAN<br>SPANISH |
| LIGHTHOUSE COMMUNITY DEVELOPMENT | P:<br>P:<br>F:<br>E:<br>W: | 248-920-6060 X 2401<br>248-335-1008 X 2402<br>248-335-1008<br>jrobinson@lighthouseoakland.org<br>www.lighthouseoakland.org | 46156 Woodward Ave | Pontiac MI 48342-0000 | ENGLISH |
| OAKLAND COUNTY HOUSING COUNSELING | P:<br>T:<br>F:<br>E:<br>W: | 248-858-5402<br>888-350-0900<br>248-858-5311<br>williamska@oakgov.com<br>www.oakgov.com/chi/housing_counsel/ | 250 Elizabeth Lake Rd Ste 1900 | Pontiac MI 48341-0414 | ENGLISH |
| OAKLAND LIVINGSTON HUMAN SERVICE AGENCY | P:<br>P:<br>F:<br>E:<br>W: | 248-209-2760<br>248-209-2790<br>248-209-2645<br>ww.susanm@olhsa.org<br>www.olhsa.org | 196 Cesar E. Chavez Ave<br>P.O.. Box 430598 | Pontiac MI 48343-0598 | ENGLISH<br>OTHERS<br>SPANISH<br>CEBAUNO<br>PHILLIPINO |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 7127 S. Westnedge Ave Ste 5C | Portage MI 49002 | ENGLISH |
| CITY OF PORT HURON | P:<br>F: | 810-984-9736<br>810-984-5384 | 100 McMorran Blvd | Port Huron MI 48060 | |
| COMMUNITY ACTION AGENCY OF ST. CLAIR COUNTY | P:<br>F: | 810-982-8541<br>810-982-7233 | 108 McMorran Blvd | Port Huron MI 48060 | |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 27085 Gratiot Ave, Ste 103 | Roseville MI 48066 | ENGLISH |
| CIRCLE OF LOVE COMMUNITY DEVELOPMENT CORP | P:<br>F:<br>W: | 989-921-0569<br>989-754-1654<br>www.circleoflovecdc.com | 1809 Durand St | Saginaw MI 48602 | ENGLISH |
| CHRISTIAN CREDIT COUNSELORS, INC | P:<br>T:<br>F:<br>W: | 248-557-8811 x 111<br>800-557-1985<br>248-557-8813<br>www.lbudget.org | 24300 Southfield Rd Ste 215 | Southfield MI 48075 | ENGLISH |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 4600 Fashion Square Blvd<br>Ste 202 | Saginaw MI 48604-2616 | ENGLISH |
| SAGINAW COUNTY COMMUNITY ACTION COMMITTEE INC | P:<br>F:<br>E: | 989-753-7741<br>989-753-2439<br>llwilliams@saginawcac.org | 2824 Perkins St | Saginaw MI 48601 | ENGLISH<br>SPANISH |
| SAGINAW HOUSING COMMISSION | P:<br>F: | 989-755-8183<br>989-755-8167 | 1803 Norman | Saginaw MI 48605 | |
| CHIPPEWA-LUCE-MACKINAC COMMUNITY ACTION HUMAN RESOURCE AUTHORITY INC | P: | 906-632-3363 | 524 Ashmun St | Sault Ste Marie MI 49783 | |
| FIVECAP, INC | P: | 231-757-3785 | 302 N. Main St | Scottville MI 49454 | |

* Listing current as of 10/2009

Michigan State Housing Developments Authority & U.S. Dept of Housing and Urban Development's Foreclosure Prevention/Avoidance Counseling Agencies*

| Agency Name | Phone Toll Free Fax Email Website | Contact Information | Address | City, State, Zip | Languages |
|---|---|---|---|---|---|
| | F: | 231-757-9669 | | | |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 26555 Evergreen Rd Ste 1060 | Southfield MI 48076 | ENGLISH |
| JEWISH VOCATIONAL SERVICE | P:<br>F: | 248-233-4482<br>248-233-4492 | 29699 Southfield Rd | Southfield MI 48076-2063 | |
| HOUSING OPPORTUNTIES MADE EQUAL (H.O.M.E.) OF MACKINAC COUNTY | P:<br>F: | 906-643-6239<br>906-643-7009 | 396 N. State St | St. Ignac MI 49719 | |
| MICHIGAN STATE UNIV EXTENSION MENOMINEE | P:<br>T:<br>F:<br>E: | 906-753-2209<br>800-236-1678<br>906-753-2200<br>erdmann@msu.edu | 5904 US Highway 41 | Stephenson MI 49887 | ENGLISH |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 8750 S Telegraph Rd Ste 100 | Taylor MI 48180 | ENGLISH |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 10850 E Traverse Hwy Ste 2280 | Traverse City MI 49684 | ENGLISH |
| NORTHWEST MICHIGAN COMMUNITY ACTION AGENCY INC | P:<br>T:<br>F:<br>E:<br>W: | 231-947-3780<br>800-632-7334<br>231-947-4935<br>cvenck@nmcaa.net<br>www.nmcaa.net | 3963 Three Mile Rd | Traverse City MI 49686 | ENGLISH<br>RUSSIAN<br>SPANISH |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 5700 Crooks Rd Ste 202 | Troy MI 48098 | ENGLISH |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 11111 Hall Rd Ste 422 | Utica MI 48317 | ENGLISH |
| GREENPATH, INC | P:<br>T:<br>E:<br>W: | 888-860-4167<br>888-860-4167<br>housingdepartment@greenpath.com<br>www.greenpath.com | 38545 Ford Rd Ste 202 | Westland MI 48185 | ENGLISH<br>PORTUGESE |
| WAYNE METROPOLITAN COMMUNITY ACTION AGENCY | P:<br>P:<br>F:<br>W: | 734-246-2280<br>313-843-2550<br>734-246-2288<br>www.waynemetro.org | 2121 Biddle Ste 102 | Wyandotte MI 48192 | ENGLISH<br>ARABIC<br>SPANISH |
| HOPE AMERICA INC. -A/K/A HELPING ORDINARY PEOPLE EXCEL | P:<br>F:<br>E:<br>W: | 734-483-5362<br>734-544-8772<br>info@hope-america.org<br>www.hope-america.org | 133 W Michigan Ave Ste 304 | Ypsilanti MI 48197 | ENGLISH |

# EXHIBIT 5

# TROTT & TROTT

*A PROFESSIONAL CORPORATION*

| HEADQUARTERS: | GRAND RAPIDS: |
|---|---|
| 31440 Northwestern Hwy • Suite 200 | 4024 Park East Ct. • Suite B |
| Farmington Hills, MI 48334 | Grand Rapids, MI 49546 |
| 248-642-2515 • Fax 248-642-3628 | 616-942-0893 • Fax 616-942-0921 |

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.
ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.

March 1, 2011

Carol Lyons
690 Gamma Rd
Walled Lake, MI 48390-3725

RE:    Carol Lyons
       690 Gamma Rd
       Walled Lake, MI 48390-3725
       T&T #360181F01
       Loan #79071743
       Freddie Mac (DC) #242611672

Dear Borrower(s):

Pursuant to your request under MCL 600.3205b, a meeting is now scheduled. The statute provides that the meeting shall be held in a place convenient to the parties or in the county in which the property is located. A meeting has been scheduled for:

    4:00 PM EST
    Tuesday March, 29, 2011
    Trott Financial Center, 31440 Northwestern Hwy Ste 200, Farmington Hills, MI 48334-5422.

Should you have any further questions or comments, please feel free to contact our office at the below number.

Sincerely,
TROTT & TROTT, P.C.
(248) 341-4740

To the extent your original obligation has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

CC: Oakland Livingston Human Service Agency
    345 East Nine Mile
    Ferndale, MI 48220

# EXHIBIT 6

# AFFIDAVIT

STATE OF MICHIGAN          )

                                      ) $

COUNTY OF OAKLAND         )

Gilbert Borman, being duly deposed and sworn, states:

1. My office has successfully negotiated over 1500 loan modifications since April 2009.

2. On Sunday, April 22nd, 2012 at approximately 4 p.m., I received a call from Carol Lyons. She had been referred to me by my friend and colleague, Valerie Moran.

3. I was requested to analyze Mrs. Lyon's qualifications for a loan modification. Ms. Moran confirmed to me that Mrs. Lyon's loan is a government backed mortgage meaning the original lender is insured against default by the government.

4. I also reviewed Mrs. Lyon's foreclosure history to determine if her lender had properly conducted the foreclosure against her home.

5. Finally, I reviewed Mrs. Lyon's current situation with her lender and have made the following conclusions:

   a. Mrs. Lyons is able to document at least $2000 in monthly gross income to her household. She receives Social Security and a small pension each month.
   b. It is my belief that she does qualify for a HAMP loan modification- not only is her loan government backed, when she was first offered a modification, the amount of her payment coincided with a typical HAMP loan modification ratio 31% of gross household income.
   c. Further, I believe that her lender's offering of a loan modification and then retracting their offer constituted a serious deviation from Federal Loan Modification procedures.

d. It is also my belief and experience that the denial of her modification in 2009 without any explanation follows a pattern and practice common to loan modifications in 2009. Lenders had great difficulty implementing their modification programs in spring 2009 and lender internal controls on their modification programs and processes were poorly managed to the detriment of many borrowers.

e. Lastly, it should be noted that throughout the loan modification program, lenders were required to certify the accuracy and truthfulness of their programs to federal and state regulators; it is my belief that the failure to complete Mrs. Lyon's modification was an error that was almost certainly reported her as unqualified or otherwise derelict in her paperwork when, in fact, she had done everything ever asked of her.

6. If called to testify, I would be able to detail my findings and my conclusions and I would welcome the chance to do so.

Further, deponent sayeth not.

April 24, 2012

_____
Gilbert Borman

Subscribed and sworn to before me this 24 day of March, 2012

Notary Public, Oakland County, MI

My commission expires: 10-22-18

SHEILA JEAN BAGNASCO
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires Oct. 22, 2018
Acting in the County of OAKLAND

# EXHIBIT 7

RECORDING REQUESTED BY:
Bank of America, N.A.
Attn Home Retention Division: CA6-919-01-43
400 National Way
Simi Valley, CA 93065

*Rejected*
*Carol Lyons*
*Sept 6, 2011*

*Payment + interest too h...*

Loan #:  79071743

----------------------------------------FOR INTERNAL USE ONLY----------------------------------------

# LOAN MODIFICATION AGREEMENT
## (Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 18th day of August 2011, between CAROL LYONS,  and Bank of America, N.A. (Lender), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the Security Instrument), dated the 29th day of September 2004 and in the amount of $161,600.00 and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as in the 'Property', located at 690 GAMMA ROAD, WALLED LAKE, MI  48390.

SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1  As of the 1st day of October 2011, the amount payable under the Note or Security Instrument (the "Unpaid Principal Balance") is U.S. $157,715.50 consisting of the amount(s) loaned to the Borrower by the Lender which may include, are not limited to, any past due principal payments, interest , fees and/or costs capitalized to date.

2  The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Interest will be charged on the Unpaid Principal Balance at the yearly rate of 6.000% from the 1st day of September 2011.  The Borrower promises to make monthly payments of principal and interest of U.S. $1,028.24 beginning on the 1st day of October 2011, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on the 1st day of January 2036 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3  The Borrower will make such payments at 400 National Way, Simi Valley, CA or at such other place as the Lender may require.

4  Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

5  In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as Documents. Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing

_____
CAROL LYONS

_____
Dated

**························································································································································**

Bank of America, N.A.

By: _____

Dated: _____

_____

STATE OF _____

COUNTY OF _____

On _____ Before _____

Notary Public, personally appeared _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

Signature

STATE OF MICHIGAN

IN THE OAKLAND COUNTY CIRCUIT COURT

**CAROL LYONS**
Plaintiff

V

**TROTT & TROTT**
**A Michigan A Professional**
**Services Corporation**
**BANK OF AMERICA, NA**
BAC Home Loan Servicing, LP
Jointly and severally
Defendants

12-126454-CH

JUDGE LEO BOWMAN
LYONS.CAROL v TROTT & TROTT

_____/

**THE MORAN LAW FIRM**
**VALERIE A. MORAN (P 56498)**
**Attorney for Plaintiff**
**115 N. Center Street Suite 203**
**Northville, MI 48167**
**248-465-9400**

_____/

## PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAIN ING ORDER, SHOW CAUSE ORDER AND PRELIMINARY INJUNCTION

NOW COMES the Plaintiff, CAROL LYONS, by and through his attorney, VALERIE A. MORAN and for his motion filed pursuant to MCR 3.310 states as follows:

1. Plaintiff is an individual residing in the County of Oakland, State of Michigan.

2. Plaintiff is the owner of real property described to wit:

3. Defendant, BANK OF AMERICA is a National Bank doing business in the County of Oakland, State of Michigan .

4.   Plaintiff relies upon all facts asserted in her verified complaint and Affidavit (Exhibit 1: Affidavit of Carol Lyons) and states that the amount in controversy exceeds $25,000.00 exclusive of costs and attorney fees.

5.   Defendant BANK of America has repeatedly failed to honor their representations and offer Plaintiff a loan modification that decreased her payments and instead repeatedly made misrepresentations to Plaintiff and frustrated the loan modification process by falsely representing criteria that Plaintiff had to meet and falsely representing the status of Plaintiff's loan modification.  Specifically, for months during the summer of 2011, Defendant Trott & Trott, local designee for Bank of America contended Plaintiff's loan modification was still under review, and claimed this as a basis to fail to provide calculations for the loan modification as requested by Plaintiff. (Exhibit 2: emails between Plaintiff counsel and Trott & Trott)

6.   In January 2012, Defendant Trott & Trott, local designee for Defendant Bank of America, produced an alleged letter from 7/21/2010 claiming the HAMP loan modification was denied back then. (Exhibit 3)

7.   Plaintiff has continued to get phone calls from Defendant Bank of America despite their knowledge that Plaintiff was represented by legal counsel.

8.   Defendant representatives  repeatedly represented that they were willing to work with Plaintiff and failed to mention that they were proceeding with the sale. Instead, Plaintiff was given the impression that the sale was being delayed.

9. Defendants, falsely, and in violation of multiple statutes, refused to allow Plaintiff to have her attorney present at a meeting they offered to schedule and falsely advised Plaintiff that they did not have to speak with her with her attorney

on the phone line.

9.   Defendants, in actuality attempted to conduct was an impromptu creditors exam, as they asked Plaintiff about her income and assets, and ALL THE WHILE the property, unbeknownst to Plaintiff, had a Sheriff Sale pending.

10. Plaintiff stands to suffer irreparable harm if not afforded a proper and adequate remedy including enjoining the Sheriff Sale which is currently set for April 24, 2012.

11. The sole reason for the necessity of this motion is due to Defendant's intentional and wrongful acts, which specifically include repeated and blatant violations of MCL 600.3205 et seq and RESPA (SEE COMPLAINT) blatant fraudulent and misleading statements made to the Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court issue injunctive relief in the form of an immediate temporary restraining order and order for a show cause hearing as to why a preliminary injunction should not issue.

Respectfully submitted:

By: _____

VALERIE A. MORAN (P 56498)
Attorney for Plaintiff
115 N. Center Street Suite 203
Northville. MI 48167
248-465-9400

APRIL 24, 2012

STATE OF MICHIGAN

IN THE OAKLAND COUNTY CIRCUIT COURT

CAROL LYONS
         Plaintiff

V

TROTT & TROTT
A Michigan A Professional
Services Corporation
BANK OF AMERICA, NA
BAC Home Loan Servicing, LP
         Jointly and severally
         Defendants

12-126454-CH



JUDGE LEO BOWMAN
LYONS.CAROL  v  TROTT & TROTT

_____/

THE MORAN LAW FIRM
VALERIE A. MORAN (P 56498)
Attorney for Plaintiff
115 N. Center Street Suite 203
Northville, MI  48167
248-465-9400

_____/

### BRIEF IN SUPORT

### INTRODUCTION

Plaintiff is the owner of the real property described in said complaint and as again set forth in the accompanying motion.  Plaintiff sought assistance from  Bank OF America and their representatives repeatedly for months.  Bank of America, despite their representations IN THE MEETING HELD PURSUANT TO MCL600.3205 that they would review Plaintiff for the HAMP program FAILED to do so and even more incredulously, FALSELY advised Plaintiff (despite being on notice for months that Plaintiff was represented by legal counsel) the

evaluation was still pending and then later after the fact, produced a letter stating the HAMP loan mod had been denied BEFORE the March,29, 2011 meeting.

## LEGAL ANALYSIS

Injunctive relief is an extraordinary remedy. A preliminary injunction serves to preserve the status quo pending a final hearing, enabling the rights of the parties to be determined without injury to either party. Pharmaceutical Research and Manufacturers of America v. Department of Community Health, 254 Mich App 397, 402,; 657 NW2d 162 (2002) (citing Fancy v Egrin 177 Mich App 714, 719; 442 NW2d 765 (1989) ). To determine whether equitable relief should be granted the issueing court must consider "(1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued." Alliance for Mentally Ill of Michigan v Department of Community Mental Health. 231 Mich App 647, 660-661; 588 NW2d 133 (1998).

In the instant matter, Plaintiff meets all prerequisites for the granting of a temporary restraining order in that Plaintiff is likely to succeed on the merits, and Defendant's egregious acts are easily apparent. Plaintiff is and will continue to suffer irreparable harm. Defendants, acts are fraudulent, in bad faith and in violation of multiple laws and statutes, including MCL 600.3205 et seq. and 12 USC 2605.

It is clear that Plaintiff will suffer irreparable harm, as a result of Defendant's improper foreclosure by the divestment of her property, ongoing vilification of the personal reputation,

with the mortgage and other consumer transactions. Plaintiff has acted in good faith and completed all documents and all requests by Defendants. Defendants, have falsely represented to Plaintiff the purpose for inquiries ie: stating income and asset information was for loss mitigation programs when a sheriff sale was pending and LYING TO PLAINTIFF THAT THEY WANTED TO WORK WITH PLAINTIFF AND IMPLYING THAT THE SHERIFF SALE HAD BEEN DELAYED.

The Plaintiff will suffer greater injury from the denial of relief than Defendant's will suffer by the granting of such relief. Defendant's will merely be delayed in proceeding, and as they have alleged no Sheriff Sale is pending, such enjoined sale would merely be consistent with Defendants representations to the Plaintiff and Plaintiff's counsel.

There is no harm to public interest, to the contrary, allowing the sale to proceed would be contrary to public interest. AS to allow the sale to proceed in light of such egregious facts would cause dimished public trust and integrity, which is already at risk due to the repeated questionable acts of the banking industry.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court issue injunctive relief in the form of an immediate temporary restraining order and order for a show cause hearing as to why a preliminary injunction should not issue.

Respectfully submitted:

By: _____

VALERIE A. MORAN (P 56498)
Attorney for Plaintiff
115 N. Center Street Suite 203
Northville, MI 48167
248-465-9400

APRIL 24, 2012

Apr-23-2012 04:03 PM Bank of America 2482052012

STATE OF MICHIGAN

IN THE OAKLAND COUNTY CIRCUIT COURT

CAROL LYONS
          Plaintiff

V

TROTT & TROTT
A Michigan A Professional
Services Corporation
BANK OF AMERICA, NA
BAC Home Loan Servicing, LP
          Jointly and severally
          Defendants

_____/

THE MORAN LAW FIRM
VALERIE A. MORAN (P 56498)
Attorney for Plaintiff
115 N. Center Street Suite 203
Northville, MI  48167
248-465-9400

_____/

## AFFIDAVIT

## PLAINTIFF CAROL LYONS

*Exhibit 1*

# AFFIDAVIT OF PLAINTIFF CAROL LYONS

STATE OF MICHIGAN

COUNTY OF _Oakland_

I, CAROL LYONS, make this affidavit voluntarily and with personal knowledge:

1. I am a Plaintiff in the above matter.

2. I tried diligently to obtain a loan modification on my home from Bank of America.

3. I timely responded to all of their requests including the request for assistance pursuant to MCL 600.3205.

4. I sought the assistance of a housing counselor and timely provided her with all documents.

5. Bank of America advised me that I did not make enough money to have my loan modified and that I had to return to work.

6. Thereafter. I got a part time job at meijers as a cashier.

7. I then supplied all income information from meijers and all documents requested again and again to Bank of America. Bank of America then told me I made too much money and again refused to lower my mortgage payment.

8. I had to quit my job due to health reasons (high blood pressure) and advised Bank of America that I was no longer working.

9. Ban k of America refused to take another look at my file or recalculate the file.

10. Bank of America in the end offered me only a loan modification that increased my payments!

11. I do not believe they accurately reviewed my loan modification request .

12. I only returned to work because Bank of America advised me that I had to.

13. After trying for years by myself and with a housing counselor to obtain a loan modification. I then obtained legal counsel who also sent in documents as requested to Trott & Trott Attorney, Brian Yoho.

14. I did not receive the letter that Bank of America claims they sent on July 21, 2010 declining my file.

15. I do not believe it was ever sent as even Trott & Trott had no knowledge that my file had been declined as they kept requesting additional documents.

16. I would like to keep my home and only requested a reduction in payments that I could afford, I believe this is approximately $900.00 per month.

17. The home has been remodeled to meet the needs of my developmentally disabled son.

18. I have received phone calls from Bank of America stating that they would work with me, to save my home and was very surprised to learn that the sheriff sale was proceeding.

19. I wanted to meet with Bank of America representatives, but they would not allow my attorney to be present at the meeting.

Sworn under penalty of perjury.

_Carol Lyons_
Carol Lyons, Plaintiff/AFFIANT

NOTARY:

Signed and sworn to before me in Oakland County, Michigan. on 4-23-12 .

sig/ _Albert A. Ferrari_

/print/ ALBERT A. FERRARI

Notary public, State of Michigan, County of WAYNE .

From: vmoranatty <vmoranatty@aol.com>
To: byoho <byoho@trottlaw.com>
Subject: Re: Lyons, Carol
Date: Mon, Jul 11, 2011 5:49 pm
Attachments: Lyons.Carol.Documents.PDF (5357K)

Hello Brian:

Attached, please find documents sent once again for Ms. Lyons.  Please be advised that you still have not responded to my repeated prior requests.

Our continued sending of documents is in an effort to cooperate and in no way waives any previously accrued causes of action for violations of MCL 600.3205et seq.  As I have previously made you aware, both Ms. Lyons and her housing counselor were advised that Bank of America had denied Ms. Lyons a loan modification. However, you contend that they have not and are still considering her file.  However, you have yet to provide me any contact person at bank of America allegedly making these requests, nor have we had any documents come directly from Bank of America setting forth document requests.  As I have several clients seeking loan modifications currently with Bank of America, I am aware that this is highly unusual.  I AGAIN ASK THAT YOU PLEASE SUPPLY THIS INFORMATION OR MAKE THE NECESSARY INQUIRIES TO OBTAIN THIS INFORMATION.  THANK YOU.

Sincerely,

Valerie Moran


-----Original Message-----
From: Brian P. Yoho <                    >
To:
Sent: Thu, Jun 30, 2011 11:59 am
Subject: Lyons, Carol

9/14/2011

Exhibit 2

Trott & Trott prides itself on excellent customer service. If you feel you have not received this service, please email your comments to

Trott & Trott would love to hear about employees that have gone out of their way to provide excellent customer service, so they can be recognized. If you wish to tell us about such an employee, please email us at

IMPORTANT: PRIVATE COMMUNICATION TO DESIGNATED RECIPIENT ONLY

This message is intended only for the use of the individual to whom it is addressed, and contains information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any unauthorized disclosure, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us and return the original message to us at the above address by reply to the sender.

**From:**                        [                          ]
**Sent:** Tuesday, August 09, 2011 8:12 PM
**To:** Brian P. Yoho
**Subject:** Fwd: Lyons, Carol

Hello Bryan:

My client still has not heard anything from Bank of America in regard to her loan modification.  Per Bank of America during  her last contact with them, her file was closed.  However, you have stated that this information is incorrect and that her loan is being reviewed for modification.  I previously asked for the name of your contact and the contact information.  You provided only the name "Gabrielle" Please advise as to her contact information.

Also:  Please advise if as of today Ms. Lyons is still in review for a loan modification, please also advise as to who we can contact directly at Bank of America with information on Ms. Lyons file.

** If Bank of America still claims the file is in review: Please also advise if Bank of America is stll stating that they have all documents needed for the loan modification review as indicated in your last email or if additional documents need to be supplied by my client.  We are happy to supply them if needed.

Thank you for your assistance.

Valerie Moran


——Original Message——
From:
To:
Sent: Fri, Jul 29, 2011 12:57 pm
Subject: Re: Lyons, Carol

Hi Brian:

Thank you for this information.  Could you please also advise as to last name and/or customer ID and/or department?  I am assuming quite a few Gabrielle's work at BOA.

I have concerns as the homeowner and her housing counselor have both been told multiple times that her loan modification file is closed.  However, when we request calculations and the determination, we are denied.  This is very stressful to Ms. Lyons who is a senior citizen.

Thank you for your assistance.

Valerie Moran


——Original Message——
From: Brian P. Yoho <byoho@trottlaw.com>
To: vmoranatty@aol.com
Sent: Fri, Jul 29, 2011 11:48 am
Subject: RE: Lyons, Carol

Apr-23-2012 04:03 PM Bank of America 2482032072                        74/83

**From:** vmoranatty <vmoranatty@aol.com>
    **To:** byoho <byoho@trottlaw.com>
**Subject:** Re: Lyons, Carol
    **Date:** Wed, Aug 10, 2011 4:58 pm

Last contact was as indicated in prior emails to you.  Please respond to all inquiries below.  I have asked multiple times.


Sincerely,


Valerie Moran
Attorney at Law
The Moran Law Firm
115 N. Center Suite 203
Northville, MI  48167
Ph: 248-465-9400
Fx: 248-465-9465




-----Original Message-----
From: Brian P. Yoho <                        >
To:
Sent: Wed, Aug 10, 2011 4:54 pm
Subject: RE: Lyons, Carol

http://mail.aol.com/34078-111/aol-6/en-us/mail/PrintMessage.aspx            9/14/2011

**From:**                    [                              ]
**Sent:** Friday, July 29, 2011 10:31 AM
**To:** Brian P. Yoho
**Subject:** Re: Lyons, Carol

Who is the person at BOA telling you this?
Sent from my Verizon Wireless BlackBerry

**From:** "Brian P. Yoho" <                          >
**Date:** Fri, 29 Jul 2011 10:19:47 -0400
**To:** <                       >
**Subject:** Lyons, Carol

**From:**                    [                              ]
**Sent:** Thursday, July 28, 2011 12:15 PM

http://mail.aol.com/34078-111/aol-6/en-us/mail/PrintMessage.aspx

9/14/2011

**To:** Brian P. Yoho
**Subject:** Fwd: Out of Office AutoReply: Lyons, Carol

Please status me on this case.  I have not heard from you.

-----Original Message-----
From: Brian P. Yoho <                    >
To:
Sent: Mon, Jul 11, 2011 5:50 pm
Subject: Out of Office AutoReply: Lyons, Carol

I will not be in the office on Friday July 8th and Monday July 11th. If your concern needs immediate attention,
please contact Rose Merithew at (248) 341-4750.

_____

Trott & Trott prides itself on excellent customer service. If you feel you have not received this service, please
email your comments to                    .

Trott & Trott would love to hear about employees that have gone out of their way to provide excellent customer
service, so they can be recognized. If you wish to tell us about such an employee, please email us at
                    .

IMPORTANT: PRIVATE COMMUNICATION TO DESIGNATED RECIPIENT ONLY

This message is intended only for the use of the individual to whom it is addressed, and contains information that
is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient,
or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified
that any unauthorized disclosure, dissemination, distribution or copying of this communication is strictly prohibited.
If you have received this communication in error, please notify us and return the original message to us at the
above address by reply to the sender.

_____

Trott & Trott prides itself on excellent customer service. If you feel you have not received this service, please
email your comments to                    .

Trott & Trott would love to hear about employees that have gone out of their way to provide excellent customer
service, so they can be recognized. If you wish to tell us about such an employee, please email us at
                    .

IMPORTANT: PRIVATE COMMUNICATION TO DESIGNATED RECIPIENT ONLY

This message is intended only for the use of the individual to whom it is addressed, and contains information that
is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient,
or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified
that any unauthorized disclosure, dissemination, distribution or copying of this communication is strictly prohibited.
If you have received this communication in error, please notify us and return the original message to us at the
above address by reply to the sender.

_____

Trott & Trott prides itself on excellent customer service. If you feel you have not received this service, please
email your comments to                    .

Trott & Trott would love to hear about employees that have gone out of their way to provide excellent customer
service, so they can be recognized. If you wish to tell us about such an employee, please email us at

IMPORTANT: PRIVATE COMMUNICATION TO DESIGNATED RECIPIENT ONLY

This message is intended only for the use of the individual to whom it is addressed, and contains information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any unauthorized disclosure, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us and return the original message to us at the above address by reply to the sender.

Trott & Trott prides itself on excellent customer service. If you feel you have not received this service, please email your comments to

Trott & Trott would love to hear about employees that have gone out of their way to provide excellent customer service, so they can be recognized. If you wish to tell us about such an employee, please email us at

IMPORTANT: PRIVATE COMMUNICATION TO DESIGNATED RECIPIENT ONLY

This message is intended only for the use of the individual to whom it is addressed, and contains information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any unauthorized disclosure, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us and return the original message to us at the above address by reply to the sender.

# TROTT & TROTT

### A PROFESSIONAL CORPORATION

**HEADQUARTERS:**
31440 Northwestern Highway • Suite 200
Farmington Hills, MI 48334
248-642-2515 • Fax 248-642-3628

**GRAND RAPIDS:**
4024 Park East Court • Suite B
Grand Rapids, MI 49546
616-942-0893 • Fax 616-942-0921

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.
ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE

January 6, 2012

Valerie Moran, Esq.
The Moran Law Firm
115 N Center St Ste 203
Northville, MI 48167

Re:     Carol Lyons
        690 Gamma Rd
        Walled Lake, MI 48390-3725
        T&T #360181F01
        Loan #79071743
        Freddie Mac (DC) #242611672

Dear Ms. Moran;

You asked for further information regarding Bank of America's decision to decline Ms. Lyon's account for HAMP in 2010. Bank of America informed me that this decision was made after Ms. Lyons failed to respond to the enclosed letter requesting financial documentation. Per Bank of America's records, this letter was sent by Fed Express on July 21, 2010.

We will proceed with setting a foreclosure sale date.

Very truly yours,
TROTT & TROTT, P.C.

Brian Yoho
Attorney
(248) 594-3285

*Exhibit 3*

Bank of America Home Loans
Mail Stop, PTX- A-65
7105 Corporate Drive
Plano, TX  75024

Carol Lyons
690 Gamma Rd
Walled Lake, MI 48390

Notice Date: 07/21/2010

Account No.: 79071743

Property Address:
690 Gamma Rd
Walled Lake, MI 48390

---

### IMPORTANT MESSAGE ABOUT YOUR LOAN

We have received your request for workout assistance.  However, we are unable to complete our review of your request until we receive additional information from you.

### WHAT THIS MEANS

If your Loan is in foreclosure, a scheduled foreclosure sale will be conducted by Bank of America Home Loans unless  Bank of America Home Loans spe cifically agrees in writing to suspend or cancel the foreclosure sale, or unless your loan is fully reinstated or paid off in accordance with your Loan documents and applicable law prior to the scheduled foreclosure sale.

If your loan is delinquent, Bank of America Home Loans will continue to report all delinquencies to the credit reporting agencies until your loan is brought fully current.  Bank of America Home Loans will not hold off or stop moving forward with foreclosure during the time it is reviewing your request for workout assistance or waiting for information from you.

### WHAT YOU NEED TO DO

Please fax the following items, attention (Kevin Potter) to 415.228.6510 by (07/27/10) or the file will be closed.  Please write your account number clearly in big numbers at the top of the cover page to ensure your documents are posted to your account.

* Current Paystubs (2 most recent) &/or Last Quarter Profit and Loss Statement (only if self-employed)

* Proof of Unemployment Income (if applicable)

* Proof of Social Security Income/ Pension (if applicable)

* Current Bank Statements for all open accounts (most recent 2 months)

* Hardship Letter

* Tax Returns (most recent)

* Proof of HOA Dues (if applicable)

* Copy of Rental Agreement (if applicable)

Please contact (Kevin Potter) at (1.877.804.4169 ext 28196) if you have any questions regarding this matter.  I look forward to assisting you.

MSSNGITEMS(Gov) 7766 02/22/2008

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

CAROL LYONS,

        Plaintiff,

v.                                Case No: 12-126454-CH
                                     Hon. Leo Bowman

TROTT & TROTT, A Michigan Professional Services Corporation;
BANK OF AMERICA, NA
BAC HOME LOAN SERVICING LP,
Jointly and severally,

                Defendants.

_____/

THE MORAN LAW FIRM
VALERIE A. MORAN (P56498)
Attorney for Plaintiff
115 n. Center Street, Suite 203
Northville, Michigan 48167
(248) 465-9400

_____/

<table>
<tr><td colspan="2"><u>Proof of Service</u></td></tr>
<tr><td colspan="2">The undersigned certifies that a copy of the within instrument was served upon the attorneys of record or the parties not represented by counsel in the above case at their respective addresses disclosed on the pleadings on the <u>24</u> day of April 2011, by:</td></tr>
<tr><td>☐</td><td>US Mail</td></tr>
<tr><td>X</td><td>Hand Delivered</td></tr>
<tr><td>☐</td><td>Wiznet – Electronic Filing System</td></tr>
<tr><td colspan="2"><i>V King</i></td></tr>
</table>

## <u>ORDER</u>

At a session of said Court held in the Courthouse in Pontiac, Oakland County, Michigan on *April 24, 2012*

PRESENT: <u>LEO BOWMAN, Circuit Judge</u>

    This matter is before the Court on plaintiff's *ex-parte* motion for Temporary Restraining Order (TRO), Show Cause, and Preliminary Injunction filed on April 24, 2012. Upon review of the motion, this Court GRANTS plaintiff's request for immediate show cause hearing on the preliminary injunction.

    Accordingly, it is ORDERED as follows:

- Plaintiff shall personally service defendants with a copy of all pleadings and provide them with a notice of hearing and this Order on or before April 25, 2012 by 4:30 p.m.

- This matter is set for a preliminary injunction hearing on May 2, 2012 at 8:30 a.m.;

- Defendants may file a response to the motion for preliminary injunction with a Judge's copy provided to chambers on or before April 27, 2012 by 4:30 p.m. and

- The Sheriff's Sale currently scheduled for today (April 24, 2012) shall be adjourned pending the preliminary injunction hearing in this matter.

IT IS SO ORDERED.

_____
HON. LEO BOWMAN

_____
Date

A TRUE COPY
_____ BULLARD JR.
Oakland County _____ Clerk - Register of Deeds
_____ Deputy

Apr 25 2012  04:09 PM Bank of America 2482092072

## STATE OF MICHIGAN
## IN THE OAKLAND COUNTY CIRCUIT COURT

CAROL LYONS
       **Plaintiff**

V

TROTT & TROTT
A Michigan A Professional
Services Corporation
BANK OF AMERICA, NA
BAC Home Loan Servicing, LP
        **Jointly and severally**
        **Defendants**



12-126454-CH

JUDGE LEO BOWMAN
LYONS, CAROL  v  TROTT & TROTT

_____/

THE MORAN LAW FIRM
VALERIE A. MORAN (P 56498)
Attorney for Plaintiff
115 N. Center Street Suite 203
Northville, MI  48167
248-465-9400
_____/

## JURY DEMAND

    Plaintiffs demand a Jury Trial on all issues triable.

                  Respectfully submitted.

By: _____

VALERIE A. MORAN (P 56498)
THE MORAN LAW FIRM
Attorney for Plaintiff
115 N. Center Street Suite 203
Northville, MI  48167

## AFFIDAVIT

STATE OF MICHIGAN             )

                                         ) $

COUNTY OF OAKLAND          )

Gilbert Borman, being duly deposed and sworn, states:

1. My office has successfully negotiated over 1500 loan modifications since April 2009.

2. On Sunday, April 22nd, 2012 at approximately 4 p.m., I received a call from Carol Lyons. She had been referred to me by my friend and colleague, Valerie Moran.

3. I was requested to analyze Mrs. Lyon's qualifications for a loan modification. Ms. Moran confirmed to me that Mrs. Lyon's loan is a government backed mortgage meaning the original lender is insured against default by the government.

4. I also reviewed Mrs. Lyon's foreclosure history to determine if her lender had properly conducted the foreclosure against her home.

5. Finally, I reviewed Mrs. Lyon's current situation with her lender and have made the following conclusions:

    a. Mrs. Lyons is able to document at least $2000 in monthly gross income to her household. She receives Social Security and a small pension each month.
    b. It is my belief that she does qualify for a HAMP loan modification- not only is her loan government backed, when she was first offered a modification, the amount of her payment coincided with a typical HAMP loan modification ratio 31% of gross household income.
    c. Further, I believe that her lender's offering of a loan modification and then retracting their offer constituted a serious deviation from Federal Loan Modification procedures.

d. It is also my belief and experience that the denial of her modification in 2009 without any explanation follows a pattern and practice common loan modifications in 2009. Lenders had great difficulty implementing their modification programs in spring 2009 and lender internal controls on their modification programs and processes were poorly managed to the detriment of many borrowers.

e. Lastly, it should be noted that throughout the loan modification program, lenders were required to certify the accuracy and truthfulness of their programs to federal and state regulators; it is my belief that the failure to complete Mrs. Lyon's modification was an error that was almost certainly reported her as unqualified or otherwise derelict in her paperwork when, in fact, she had done everything ever asked of her.

6. If called to testify, I would be able to detail my findings and my conclusions and I would welcome the chance to do so.

Further, deponent sayeth not.

April 24, 2012

Gilbert Borman

Subscribed and sworn to before me this 24 day of March, 2012

Notary Public, Oakland County, MI

My commission expires: 10-22-18

SHEILA JEAN BAGNASCO
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires Oct. 22, 2018
Acting in the County of OAKLAND